[No. A048170. First Dist., Div. Five. Sept. 20, 1990.]

BARBARA GOLSTEIN et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
WEST COAST CANCER FOUNDATION et al., Real Parties in
Interest.

**COUNSEL**

Hersh & Hersh, Nancy Hersh and Amy Eskin for Petitioners.

No appearance for Respondent.

Bjork, Fleer, Lawrence & Harris, Robert K. Lawrence, Greines, Martin, Stein & Richland, Martin Stein, Timothy T. Coates, Roxanne Huddleston, O'Connor, Cohn, Dillon & Barr, Janet L. Grove, Deborah L. Panter, Anderson, Galloway & Lucchese, Robert L. Anderson and Sonja M. Dahl for Real Parties in Interest.

## OPINION

**HANING, J.**—Petitioners are the surviving parents of Dwight Golstein II, a nine-year-old boy who died as a result of the negligent administration of an overdose of radiation while undergoing treatment for curable cancer. Petitioners seek a writ of mandate to reinstate their causes of action for negligent infliction of emotional distress. These causes of action are primarily premised upon the "bystander" recovery theory of *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], which permits recovery for emotional distress under certain circumstances to one witnessing negligently caused injury to a loved one. The trial court concluded petitioners could not state a *Dillon* cause of action because the injury-causing event—the excessive irradiation—was incapable of sensory perception. Given the pronouncements of the Supreme Court in *Thing* v. *La Chusa* (1989) 48 Cal.3d 644 [257 Cal.Rptr. 865, 771 P.2d 814], we are compelled to deny the requested writ.

I

This petition arises from a ruling on a demurrer. As such, we accept as true the allegations of material fact in petitioner's complaint. (See *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].)

Dwight was diagnosed with curable cancer in November 1987 at the age of eight. Petitioners sought treatment for Dwight at Children's Hospital of Oakland, which in turn retained real party Alta Bates Hospital, its Department of Radiation and Oncology, and Dr. Lorraine Champion, M.D., "to supervise, diagnose, care for and treat [Dwight's] physical condition, which included the necessary administration of radiation for treatment of his cancer." The West Coast Cancer Foundation operated a computer facility "for the purpose of preparing data for the administration of radiotherapy"; Alta Bates retained the foundation for the purpose of preparing data so that

Alta Bates and Dr. Champion could administer radiotherapy in the treatment of Dwight's cancer.[1]

Due to the negligence of Dr. Champion, West Coast Cancer Foundation, and real party, Dwight was given an overdose of radiation which resulted in terminal radiation poisoning. Petitioners apparently were informed of the excessive irradiation after the fact. They did not, and could not, observe the radiation overdose; they admit that during the radiation therapy they were unaware Dwight was being overexposed. Their complaint alleges that "by its very nature" the radiation treatment produced an injury "that was not immediately visible" and which "caused no obvious or immediately visible injury." At the time of the administration of radiation, petitioners "could not know" that the conduct of real party "was dangerous and was causing their son to suffer a devastating and fatal injury."

Petitioners were, however, "present and witnessed the results of" the negligent overradiation, when after an unspecified period of time the symptoms of radiation poisoning became visible. The radiation poisoning caused a "grotesque alteration" of Dwight's appearance.[2] Petitioners "were present and contemporaneously observed the grotesque, deteriorating and worsening condition" of their son "on a daily basis and observed [his] injuries, suffering and pain . . . up to the time of his death."

Petitioners' complaint sought damages for wrongful death, and for negligent infliction of emotional distress based on petitioners' having witnessed the lingering injury to Dwight. Real party demurred to petitioners' distress causes of action on the ground that petitioners neither contemporaneously observed with their senses the injury-causing event which caused injury to Dwight, nor had an understanding of the consequences of that event. Respondent court agreed and sustained the demurrer without leave to amend, leaving petitioners only their claims for wrongful death. This petition followed.

## II

### A

Petitioners argue that they are entitled to state a *Dillon* cause of action because they were present to witness the results of the injury-causing event, and because they cannot fairly be required to contemporaneously

---

[1] Dr. Champion and West Coast Cancer Foundation were defendants below and real parties herein, but settled with petitioners during the pendency of this writ proceeding.

[2] The symptoms are graphically described in the petition but are not alleged in the complaint.

observe an injury-causing event which is not capable of observation by the senses. Real party responds that the Supreme Court's recent treatment of *Dillon* recovery in *Thing* requires contemporaneous observance of the injury-causing event; if such an event cannot be observed by the senses, the would-be *Dillon* plaintiff can only witness the injury and simply does not suffer the magnitude of emotional distress actionable under *Dillon*. Petitioners reply with the contention that *Thing* involved a prototypical traffic accident case and did not discuss or involve the more difficult problem of the invisible injury-causing event.

The *Dillon* cause of action has undergone a tortuous development. (See, e.g., *Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159, 178-179 [216 Cal.Rptr. 661, 703 P.2d 1] [conc. opn. of Grodin, J.]; Diamond, *Dillon v. Legg Revisited: Toward a Unified Theory of Compensating Bystanders and Relatives for Intangible Injuries* (1984) 35 Hastings L.J. 477, 478.) Like many new causes of action, *Dillon* recovery expanded beyond its initial source as a stream broadens to a river; but like a river flowing over rocks, the law of *Dillon* recovery encountered various contexts and fact patterns and resulted in an irregular mosaic of currents and depths. In *Thing* the Supreme Court dammed much of the river's flow and attempted to channel *Dillon* recovery into the order and predictability of a man-made canal. Unfortunately, the *Thing* opinion did not discuss or resolve the troublesome side-current of the traumatic but invisible injury-causing event, an event which either cannot be perceived or cannot be perceived with meaningful understanding. California law remains analytically confused regarding bystander recovery for injury-causing events which are themselves invisible, but which leave visible manifestations witnessed by distressed family members.

### B

In *Dillon* the Supreme Court permitted a mother to recover damages for emotional distress for witnessing her daughter being struck and killed by a negligent driver. Overruling *Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295 [29 Cal.Rptr. 33, 379 P.2d 513] and that case's "zone of danger" rule for bystander recovery, the *Dillon* court fashioned a test for recovery based on the observance itself without regard to whether the plaintiff was within a personal "zone of danger." In attempting to define the duty owed by a negligent actor toward an unendangered witness of an accident, the court stressed traditional tort principles of foreseeability and duty. The " 'foreseeability of risk [is] of . . . primary importance in establishing the element of duty.' " (*Dillon v. Legg, supra*, 68 Cal.2d at p. 739, quoting *Grafton* v. *Mollica* (1965) 231 Cal.App.2d 860, 865 [42 Cal.Rptr. 306].) Under general tort principles a plaintiff outside the "zone of danger" may

foreseeably suffer emotional distress at witnessing the injury or death of a loved one endangered by a defendant's negligence. (*Id.,* at p. 740.)

"Since the chief element in determining whether [a] defendant owes a duty or an obligation to [a] plaintiff is the foreseeability of the risk, that factor will be of prime concern in every case." (*Dillon* v. *Legg, supra,* 68 Cal.2d at p. 740.) Emphasizing that "no immutable rule" can establish the presence or absence of a duty, the *Dillon* court defined "guidelines" to "aid in the resolution" of the duty issue in future bystander-recovery cases. Courts faced with questions of duty "will take into account such factors as . . . : (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon [the] plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." (*Id.,* at pp. 740-741.)

The three *Dillon* guidelines were not initially intended to be a rigid checklist, but were conceived by *Dillon* as "elements [which] shade into each other." (*Dillon* v. *Legg, supra,* 68 Cal.2d at p. 741.) A finding of duty with the aid of the guidelines would be "intimately tied into the facts [and would depend] upon each case"; duty would be found if, in light of the three guidelines, "the accident and harm [were] *reasonably* foreseeable." (*Ibid.,* italics in original.)

C

This case concerns the second *Dillon* guideline, the factor of contemporaneous sensory observance of the accident giving rise to the injury. Post-*Dillon* appellate decisions have been inconsistent and have illustrated the analytical confusion surrounding the problem of contemporaneous observance. Much of the inconsistency arises from *Dillon*'s positing the opposite poles of direct contemporaneous observance versus learning of an accident after the fact through the medium of another. Cases have shown ample confusion regarding fact patterns falling between these two extremes, such as that of the plaintiff who does not see the injury-causing event but, rather than learning of the event well after the fact, witnesses its immediate consequences.

In *Archibald* v. *Braverman* (1969) 275 Cal.App.2d 253 [79 Cal.Rptr. 723], a mother was permitted to recover when she did not see the accident—an explosion—but came upon the scene "within moments" to

observe her child lying wounded. Under these facts actual sensory observance was not required: "[T]he shock sustained by the plaintiff must be fairly contemporaneous with the accident rather than follow when the plaintiff is informed of the whole matter at a later date. [Citation.]" (*Archibald* v. *Braverman, supra*, 275 Cal.App.2d at p. 256.) "Manifestly, the shock of seeing a child severely injured immediately after the tortious event may be just as profound as that experienced in witnessing the accident itself." (*Ibid.*)

Subsequent decisions refused to extend beyond a few moments in time the *Archibald* exception to contemporaneous observation. (See, e.g., *Deboe* v. *Horn* (1971) 16 Cal.App.3d 221 [94 Cal.Rptr. 77] [plaintiff informed of injuries to spouse after accident at emergency room]; *Powers* v. *Sissoev* (1974) 39 Cal.App.3d 865 [114 Cal.Rptr. 868] [plaintiff observed injuries 30-60 minutes after unobserved accident].)

In *Jansen* v. *Children's Hospital Medical Center* (1973) 31 Cal.App.3d 22 [106 Cal.Rptr. 883], the developing law of the second *Dillon* factor was first applied to the medical setting as opposed to the standard accident scenario. The negligent conduct was not a physical act capable of observance, but a physician's mental failure to diagnose a young girl's illness. Although the plaintiff observed the "injury"—the child's slow and painful decline into death—the *Jansen* court denied recovery because the plaintiff did not "observe" the "accident." "Failure of diagnosis . . . is not an event which can itself be perceived by the [layperson]." (*Id.*, at p. 24.) *Jansen* accepted the *Archibald* exception on the narrow ground that the plaintiff there, coming upon her injured son, must have "substantially contemporaneously" reconstructed the accident mentally. The *Jansen* court further noted that the *Archibald* plaintiff actually did sensorily perceive the explosion because it could be "inferred" from the opinion that she heard, if not saw, the accident. These interpretations of *Archibald* are strained. Nothing in the *Archibald* opinion indicates the mother heard the explosion; even if she had, the *Archibald* court did not even discuss, much less employ as a basis for recovery, any theory of contemporaneous auditory perception.

The *Jansen* court appeared to be concerned with an expansion of liability to plaintiffs who did not sensorily perceive an accident, but only the resulting injuries. Nothing else explains *Jansen*'s limiting interpretations of *Archibald*, a decision which carves out an explicit exception to the observation requirement. Two succeeding decisions, however, were more flexible in their application of the factor of contemporaneous observance. In *Krouse* v. *Graham* (1977) 19 Cal.3d 59 [137 Cal.Rptr. 863, 562 P.2d 1022], the Supreme Court's first return to this issue, recovery was permitted a nonpercipient (but on-scene) plaintiff because of his ability to mentally reconstruct

the accident. In *Nazaroff* v. *Superior Court* (1978) 80 Cal.App.3d 553 [145 Cal.Rptr. 657], on facts very similar to *Archibald* the plaintiff was permitted to recover: by rushing on the scene and witnessing the injury ("the immediate consequences of [the] defendant's negligent act") she could mentally reconstruct the accident and did not learn of it from another. (*Id.*, at p. 566.) In contrast, two other decisions took a less flexible approach and denied recovery for failure to sensorily perceive the accident. (*Parsons* v. *Superior Court* (1978) 81 Cal.App.3d 506 [146 Cal.Rptr. 495, 5 A.L.R.4th 826] [plaintiff's car followed that of their daughters, came around the bend to witness daughters' fatal accident "before the dust had settled"]; *Hathaway* v. *Superior Court* (1980) 112 Cal.App.3d 728 [169 Cal.Rptr. 435] [parents came upon scene of son's fatal electrocution "within moments" of accident].)

The confusion over the requirement of contemporaneous observance had already sprung conflicting decisions, some employing rather artificial concepts to grant or deny recovery. Some of the cases denied recovery to a plaintiff who happened upon the accident scene within moments and witnessed the injuries, thus implausibly placing that plaintiff on the same level of emotional trauma as one who heard about the accident from another substantially after the fact. The confusion was exacerbated by the problem of the injury-causing event which—unlike the paradigmatic accident, such as a traffic collision or explosion—is essentially invisible to the plaintiff, either because it is incapable of sensory perception or it cannot be meaningfully perceived by a layperson.

Although briefly noted in *Jansen*, the problem of the invisible injury-causing event was more fully discussed in *Mobaldi* v. *Regents of University of California* (1976) 55 Cal.App.3d 573 [127 Cal.Rptr. 720] (disapproved in part on unrelated grounds, *Baxter* v. *Superior Court* (1977) 19 Cal.3d 461, 466 [138 Cal.Rptr. 315, 563 P. 2d 871], and *Elden* v. *Sheldon* (1988) 46 Cal.3d 267, 277 [250 Cal.Rptr. 254, 758 P.2d 582]), and *Justus* v. *Atchison* (1977) 19 Cal.3d 564 [139 Cal.Rptr. 97, 565 P.2d 122] (disapproved in part on unrelated grounds, *Ochoa* v. *Superior Court, supra,* 39 Cal.3d at p. 171). In *Mobaldi*, the plaintiff held her three-year-old son in her arms to comfort him during hospital tests for a congenital disease. The attending physicians administered an injection of a dye preparatory to an X-ray. The dye was supposed to be in a 5 percent glucose solution; the physicians negligently used a 50 percent solution, "a drastically unsafe" concentration. (*Mobaldi* v. *Regents of University of California, supra,* at p. 578.) The doctors left the room with an IV containing the dangerous solution in place. The plaintiff, while holding her child, witnessed him begin to breathe peculiarly, go into convulsions, and lapse into a coma. By the time the doctors returned, the

child had suffered permanent brain damage, blindness, quadriplegia and other debilitating conditions.

The *Mobaldi* court allowed *Dillon* recovery on the theory that the plaintiff suffered a " 'direct emotional impact . . . from the sensory and contemporaneous observance of the accident.' " (*Mobaldi* v. *Regents of University of California, supra*, 55 Cal.App.3d at p. 583 quoting *Dillon* v. *Legg, supra*, 68 Cal.2d at p. 740.) To reach this conclusion the court reasoned that the injury-causing event, or "accident," was the injection, and the plaintiff witnessed both the injection and the resulting injuries. This assignment of terminology reflects the imperfect adaptation of "accident" language and concepts to the medical setting. The actual negligent act was not simply the injection itself, but the use of the wrong solution, an act which plaintiff, as a medical layperson, could not meaningfully perceive: what appeared to her as an innocent-seeming injection was actually the conduit of medical negligence and the cause of her child's injuries. Unlike an explosion, traffic accident, or electrocution, the injury-causing event in *Mobaldi* was essentially invisible to the plaintiff and not a component of her emotional trauma.

Even accepting the injection as the "accident," its role in triggering the emotional trauma is meaningless because—unlike a car bearing down on one's child—the event was bereft of obvious danger. Perhaps in recognition of this fact, the *Mobaldi* court—while seeming to affirm the requirement of observation of the injury-causing event—discussed *Dillon*'s stress of general foreseeability and commented: "Foreseeability depends upon what the emotionally traumatized plaintiff observes. *It is observation of the consequences of the negligent act and not observation of the act itself* that is likely to cause trauma so severe . . ." as to allow recovery. (*Mobaldi* v. *Regents of University of California, supra*, 55 Cal.App.3d at p. 583, italics added.) Whether or not the plaintiff saw the injection does not seem to be the hinge upon which the *Mobaldi* decision turns; the true basis for recovery appears to be the presence of the plaintiff to witness the immediate, and egregious, results of the defendant's unseen negligence.

In *Justus*, two husbands sought *Dillon* recovery for medical negligence resulting in fetal stillbirths. Both plaintiffs were present in the delivery room and could tell that something was amiss during the birth process; each could see his wife's distress and was promptly informed by a physician that the fetus was stillborn. The Supreme Court denied recovery because the plaintiffs had to be informed of the stillbirths by another, and thus fell under the *Dillon* bar of recovery to those who simply learn of injuries after the fact. Although the plaintiffs were physically present, they did not witness the injuries to the victims as did the plaintiff in *Mobaldi*; unlike the injuries in that case, the fetal stillbirths were "by [their] very nature hidden

from . . . contemporaneous perception . . . ." (*Justus* v. *Atchison, supra,* 19 Cal.3d at p. 584.)

## D

The next major treatment of the second *Dillon* factor was *Ochoa* v. *Superior Court, supra,* 39 Cal.3d 159. In *Ochoa* the plaintiffs witnessed the neglect of their son's obvious medical needs by the staff of a juvenile hall infirmary. Plaintiffs were present to witness the boy's suffering and the defendants' neglect; after they were ejected the boy died. In upholding *Dillon* recovery, the Supreme Court first reaffirmed that the "touchstone" of a *Dillon* cause of action was foreseeability. (*Id.,* at pp. 166-167.) The court next clarified that—contrary to a suggestion in *Justus*—an injury-causing event did not have to be a sudden occurrence, but could be a pattern of negligent conduct: "[T]he 'sudden occurrence' requirement is an unwarranted restriction on the *Dillon* guidelines. Such a restriction arbitrarily limits liability when there is a high degree of foreseeability of shock to the plaintiff and the shock flows from an abnormal event . . . ." (*Id.,* at p. 168.)

*Ochoa* reviewed as "instructive," and apparently approved, *Archibald, Nazaroff, Mobaldi* and *Krouse,* all examples of flexible *Dillon* application. (*Ochoa* v. *Superior Court, supra,* 39 Cal.3d at pp. 168-169.) In so doing the court appeared to find less significant the observance of the defendant's negligent conduct as opposed to the observance of the injury. *Nazaroff* is described as a case in which the mother "mentally reconstructed" the accident by her own senses, but the *Ochoa* court focused on the emotional shock " 'proximately caused by direct emotional impact from the *contemporaneous observation of the immediate consequences of the defendants' negligent act* . . . .' " (*Id.,* at p. 169, quoting *Nazaroff* v. *Superior Court, supra,* 80 Cal.App.3d at pp. 566-567, italics added by the *Ochoa* court.) *Ochoa* describes *Mobaldi,* with evident approval, as a case permitting recovery because the plaintiff observed " 'the physical injury to another in her presence' " caused by the defendant's negligence. (*Id.,* at p. 169, quoting *Mobaldi* v. *Regents of University of California, supra,* 55 Cal.App.3d at p. 577.)

Notwithstanding these indications, *Ochoa* did not hold that *Dillon* recovery may be had for witnessing the injury and not the injury-causing event; neither did the decision discuss at length the problem of the injury-causing event which cannot be sensorily observed or cannot be observed with meaningful comprehension. Turning to the facts before it, which involved an observable event and injury—as well as an obvious causal connection between the two—the *Ochoa* court constructed a broad interpretive *Dillon* rule around the facts presented. "[W]hen there is observation of the

defendant's conduct and the . . . injury and contemporaneous awareness the defendant's conduct or lack thereof is causing harm to the [victim], recovery is permitted." (*Ochoa v. Superior Court, supra,* 39 Cal.3d at p. 170.)

*Ochoa* made explicit a requirement of witnessing, with knowing comprehension, the "causal connection" between accident and injury. In so doing, the court paradoxically cited with apparent approval a line of cases which permitted recovery *without* a comprehending sensory perception of the injury-causing event. The court also characterized *Jansen* as denying recovery when the event was perceived but the plaintiff did not witness or understand the "causal connection" between event and injury, when the case denied recovery for lack of observation of an essentially unobservable event.

*Ochoa* left unresolved the problem of the essentially invisible injury-causing event. A blanket rule permitting recovery in all cases where only the injury was observed, many times substantially after the fact of the injury, would obviously be inconsistent with *Dillon.* On the other hand, a rule permitting recovery for plaintiffs who are present and observe the injury, when that directly results from an injury-causing event incapable of perception, would not necessarily be inconsistent with *Dillon*'s baseline of foreseeability. At least one case, *Mobaldi,* approved recovery for witnessing an injury when the "perception" of the injury-causing event was a meaningless adjunct to the emotional trauma of the setting. No clear rule, however, emerged from *Dillon* to *Ochoa.*

### III

The Supreme Court recently returned to the second *Dillon* factor in *Thing.* The plaintiff in *Thing* was the mother of a child who was struck and injured by the defendants' automobile. She "was nearby, but neither saw nor heard the accident." (*Thing v. La Chusa, supra,* 48 Cal.3d at p. 647.) "She became aware of the injury to her son when told by a daughter that [he] had been struck by a car. She rushed to the scene where she saw her bloody and unconscious child, who she believed was dead, lying in the roadway." (*Id.,* at pp. 647-648.) She sued defendants for emotional distress "as a result of these events . . . ." (*Id.,* at p. 648.)

Defendants moved for summary judgment. The trial court granted the motion because the plaintiff/mother "did not contemporaneously and sensorily perceive the accident." (*Thing v. La Chusa, supra,* 48 Cal.3d at p. 648.) The Court of Appeal reversed, reasoning that plaintiff could recover under *Ochoa.* The Supreme Court granted review and denied recovery.

The introductory paragraphs of *Thing* indicate the Supreme Court was formulating broad policy in the *Dillon* field, in an attempt to refine the *Dillon* guidelines "to create greater certainty in this area of the law." (*Thing* v. *La Chusa, supra*, 48 Cal.3d at p. 647.) "[W]e consider the appropriate application of the concept of 'duty' in an area that has long divided this court—recognition of the right of persons, whose only injury is emotional distress, to recover damages when that distress is caused by knowledge of the injury to a third person caused by the defendant's negligence." (*Ibid*.) "Upon doing so, we shall conclude that the societal benefits of certainty in the law, as well as traditional concepts of tort law, dictate limitation of bystander recovery of damages for emotional distress." (*Ibid*.)

The Supreme Court proceeded with an historical analysis of the concept of recovery for distress damages in general (*Thing* v. *La Chusa, supra*, 48 Cal.3d at pp. 648-651), and then extensively discussed *Dillon*. (*Id.*, at pp. 651-655.) It then commented that "[p]ost-*Dillon* decisions have now permitted plaintiffs who suffer emotional distress, but no resultant physical injury, and who were not at the scene of and thus did not witness the event that injured another, to recover damages on grounds that a duty was owed to them solely because it was foreseeable that they would suffer that distress on learning of injury to a close relative." (*Id.*, at p. 653.)

Post-*Dillon* cases, however, including Supreme Court cases such as *Krouse,* permitted recovery not on the sole basis of an after-the-fact "learning" of the injury from another, but on processes of "mental reconstruction," or on immediately coming upon the aftermath of an injury. In discussing the post-*Dillon* cases, the *Thing* court employs the "either-or" model of polar opposites: either the plaintiff is present and contemporaneously perceives the accident or injury-causing event, or he perceives nothing and only learns of the injury after the fact through the filter of another's perceptions. The troublesome middle ground of being present but mentally reconstructing the event (as in *Krouse*) or coming upon the bloody aftermath (as in *Archibald*) is not discussed.

Without discussing the application of *Dillon* principles to the problem of the injury-causing event incapable of meaningful comprehension or sensory perception, *Thing* reaffirms *Ochoa*'s requirement of observation of the injury-causing event, the injury, and the causal connection between them. The opinion concludes with a lengthy discussion of the policies of limiting *Dillon* recovery (*Thing* v. *La Chusa, supra*, 48 Cal.3d at pp. 661-667), with the theme of limiting recovery because the "overwhelming majority" of emotional distress "which we endure" is "not compensable." (*Id.*, at p. 667.) ▮ *Thing* concludes that "a plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third

person if, but only if, said plaintiff: (1) is closely related to the injury victim; (2) *is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim*; and (3) as a result suffers serious emotional distress—a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances." (*Id.*, at pp. 667-668, italcis added, fns. omitted.) Neither *Mobaldi* nor *Jansen* were mentioned, but *Archibald* and *Nazaroff* were disapproved.

Pre-*Thing* cases might have provided analytical justification for *Dillon* recovery on facts as compelling as those in the instant case. *Mobaldi*, last cited by the Supreme Court with approval in the *Dillon* context (*Ochoa* v. *Superior Court, supra*, 39 Cal.3d at p. 169), would support recovery for direct, immediate perception of injuries when the observation of the event which caused them is of little or no import. It is manifest, however, that *Thing* declares the scope of *Dillon* recovery should be limited by more stringent definition of the requirement of contemporaneous observance of event and injury.

Although *Thing* was a classic traffic accident case involving a plaintiff learning *post hoc* of the circumstances from another, and not the invisible tort, it purports to be a clarification of an entire field of law. ■ Its policy statement appears to us to be clear: understanding perception of the injury-causing event is an essential component of *Dillon* recovery. In the case of an event which cannot be perceived, distress recovery is not allowed. Petitioners argue that since radiation is invisible its fatal dosage cannot be seen, and it is unjust to deny them recovery based on rules having their origins in fact patterns involving visible events such as accidents.[3] Were it not for *Thing*, petitioners would have a compelling case. ■ ■ ■ ■ ■ However, we interpret *Thing's* policy statement as a requirement that *Dillon* plaintiffs experience a contemporaneous sensory awareness of the causal connection between the negligent conduct and the resulting injury.[4]

---

[3] Indeed, we repeatedly asked petitioners' counsel at oral argument to present some analytical distinction between this case and the standard medical malpractice case, where the injury is typically witnessed by the plaintiff but the plaintiff does not see, or meaningfully comprehend, the actual injury-causing event. Counsel was unable to do so. We are reasonably certain the Supreme Court would not accept a conclusion which could apply *Dillon* recovery almost automatically to a medical malpractice plaintiff who observes only the suffering of the victim and not the actual event that causes that suffering.

[4] Petitioners' remaining arguments are without merit. Petitioners argue that to deny them recovery, but extend it to plaintiffs who witness observable events such as accidents, denies them equal protection of the law. They also contend that in the alternative to *Dillon* recovery they can recover for emotional distress as the "direct victims" of their contract with real parties to provide Dwight with medical care. (See *Newton* v. *Kaiser Foundation Hospitals* (1986) [184 Cal.App.3d 386, 228 Cal.Rptr. 890]; *Andalon* v. *Superior Court* (1984) 162 Cal.App.3d 600 [208 Cal.Rptr. 899].) It appears that petitioners have no "direct victim" claim under

As the Supreme Court stated the rule in *Thing*, the plaintiff must be "present at the scene of the injury-producing event at the time it occurs and . . . then aware that it is causing injury to the victim . . . ." (*Thing* v. *La Chusa, supra,* 48 Cal.3d at p. 668, fn. omitted.)

## IV

The alternative writ is discharged. The petition for writ of mandate is denied.

Low, P. J., and King, J., concurred.

Petitioners' application for review by the Supreme Court was denied December 19, 1990. Mosk, J., was of the opinion that the application should be granted.

*Newton* and *Andalon*, two decisions of the Third District which extended the rule of *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518]. The *Thing* opinion specifically criticizes these two cases (*Thing* v. *La Chusa, supra,* 48 Cal.3d at pp. 659-660), and the Supreme Court declined to follow them in *Marlene F.* v. *Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 591, fn. 7 [257 Cal.Rptr. 98, 770 P.2d 278].