Rachel ASARO, Appellant,

v.

CARDINAL GLENNON MEMORIAL HOSPITAL, et al., Respondents.

No. 72548.

Supreme Court of Missouri,
En Banc.

Nov. 20, 1990.

As Modified on Denial of Rehearing
Dec. 18, 1990.

James A. Stemmler, St. Louis, for appellant.

Kemper R. Coffelt, Clayton, Ben Ely, Jr., Cherly A. Callis, Philip L. Willman, Robyn G. Fox, Christiana M. Rush, St. Louis, for respondents.

Lori J. Levine, Carla G. Holste, Gerald M. Sill, Jefferson City, for amicus curiae Missouri Hosp. Assn.

Jeffrey P. Hine, John L. Oliver, Jr., Cape Girardeau, for Missouri Organization of Defendant Lawyers.

Ronald R. Holliger, Kansas City, for amicus MATA.

ROBERTSON, Judge.

In *Bass v. Nooney Co.*, 646 S.W.2d 765 (Mo. banc 1983), this Court abrogated the impact rule and permitted a plaintiff to recover for emotional distress without first showing a contemporaneous traumatic physical injury. This case addresses the issue left open in footnote 3 of *Bass*. May a plaintiff recover for emotional distress resulting solely from observing injury to a third party caused by a defendant's negligence? We hold that a plaintiff may recover for emotional distress resulting from observing physical injury to a third person only if the plaintiff is within the zone of danger. The judgment of the trial court dismissing plaintiff's petition for failure to state a cause of action is affirmed.

### I.

Rachel Asaro alleges that the defendants, physicians and institutional health care providers negligently treated her son, Leonard. As a result of that alleged medical malpractice *to her son*, Asaro claims that *she* suffered emotional distress and seeks damages from these defendants for their negligent infliction of that emotional distress. The trial court dismissed Asaro's

petition as failing to state a cause of action. The Court of Appeals, Eastern District, reversed and remanded. We granted transfer and have jurisdiction. Mo.Const. art. V, § 10.

■ On review, "we accept as true facts properly pleaded, giving the averments a liberal construction, and making those reasonable inferences fairly deductible from the facts stated." *Stiffelman v. Abrams*, 655 S.W.2d 522, 525 (Mo. banc 1983). Plaintiff's petition states a cause of action if its averments invoke principles of substantive law which may entitle the plaintiff to relief. *Shapiro v. Columbia Union National Bank and Trust Co.*, 576 S.W.2d 310, 312 (Mo. banc 1978), *cert. denied*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979).

The facts, as alleged in appellant Asaro's petition, are as follows: On July 19, 1983, appellant Asaro's five-year-old son underwent heart surgery to remove a subaortic fibrous ring at respondent Cardinal Glennon Memorial Hospital. A Dr. Pennington performed the operation. Following surgery, Dr. Pennington informed appellant that a portion of the ring had not been removed. Pennington's report of the operation, however, incorrectly stated that the fibrous ring was completely removed.

The child continued to suffer the pain and fainting spells which marked his preoperative condition. The presence of the partial ring continued to damage Leonard's heart. As a result of the incorrect operation report, however, appellant's efforts to obtain the further medical help necessary were frustrated. On January 17, 1985, a test was performed, apparently involving respondent Dr. Nouri, which failed to indicate the presence of the ring. Coupled with the inaccurate report upon which other defendants relied, these test results led to the defendants' decision not to pursue further procedures which would have disclosed the presence of the ring. Ultimately, another surgeon removed the remainder of the ring at another hospital on February 25, 1985.

Appellant's petition further states that all the named defendants acted as agents for one another and that all defendants ratified and approved of each other's actions. Appellant avers that defendants negligently failed to provide the proper degree of health care to her son. As a result of such failure appellant underwent severe, medically diagnosable and significant emotional distress and depression.

## II.

### A.

This Court recognized a cause of action for negligent infliction of emotional distress without contemporaneous physical trauma in *Bass v. Nooney Co.*, 646 S.W.2d 765 (Mo. banc 1983). *Bass* permits a plaintiff to recover for her own emotional distress upon a showing that:

(1) the defendant should have realized that his conduct involved an unreasonable risk of causing the distress; and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant.

*Id.* at 772–73.

Asaro argues initially that she states a cause of action under *Bass*. This argument is incorrect. The plaintiff in *Bass* claimed emotional distress resulting from her own entrapment inside a stalled elevator. This Court expressly did not decide the question whether a cause of action exists in Missouri when "a plaintiff suffers mental or emotional distress upon observing death or injury to a third party caused by a defendant's negligence." *Id.* at 770, n. 3. Indeed the Court's opinion in *Bass* parallels the Restatement (Second) of Torts in allowing a claim for emotional distress where the defendant "should have realized that his conduct involved an unreasonable risk of causing the distress." Restatement (Second) of Torts § 313(1)(a). But this rule has "no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other." *Id.* § 313(2). Thus, *Bass* is not

authority for the cause of action Asaro avers. This is a case of first impression.

### B.

The impact rule, abrogated in *Bass*, required a showing of a contemporaneous physical trauma to the plaintiff before permitting that plaintiff to recover for attendant emotional distress. The abandonment of the impact rule resulted from the appropriate recognition by courts of two related concepts: First that a negligent actor can induce mental trauma in another without physical impacts, and second, that advances in medical science permit the diagnosis of mental trauma with accuracy akin to that available for the diagnosis of physical trauma. *Tobin v. Grossman*, 24 N.Y.2d 609, 301 N.Y.S.2d 554, 555–56, 249 N.E.2d 419, 420–21 (1969). The extension of potential liability beyond impact announced in *Bass* thus followed a national trend which saw courts exercise their common law prerogative to reevaluate rules of liability in light of advances in science and changing societal norms.

With the abrogation of the impact rule, the potential for extended liability and new causes of action arose. Two alternative rules of liability arose to fill the vacuum left by the abandonment of the impact rule. The New York Court of Appeals adopted a zone of danger standard in *Tobin*. California permitted recovery for the reasonably foreseeable plaintiff in *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), expressly rejecting the zone of danger rule as "hopeless artificiality." *Id.*, 69 Cal.Rptr. at 75, 441 P.2d at 915.

Tort liability begins with a determination that a tortfeasor owes a duty of care to the person injured. "Duty," according to Professor James, "is measured by the scope of the risk which negligent conduct foreseeably entails." James, *Scope of Duty in Negligence Cases*, 47 N.W.U.L.Rev. 778, 781 (1953). *See also Lowrey v. Horvath*, 689 S.W.2d 625, 627 (Mo. banc 1985). ("As a general proposition, a duty of care which is imposed by the law of negligence arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury.") Yet as Dean Prosser suggested, foreseeability goes "forward to eternity, and back to the beginning of the world." Prosser, *Palsgraf Revisited*, 52 Mich.L.Rev. 1, 24 (1953). For this reason, no court has defined duty as being coextensive with foreseeability. And courts that have initially spoken broadly about a foreseeability standard of duty have retreated.

The California experience is instructive. *Dillon* held that the right to recover for emotional distress should be determined by the application of "neutral principles of foreseeability, proximate cause and consequential injury that generally govern tort law." *Id.*, 69 Cal.Rptr. at 72, 441 P.2d at 912. Doubting its ability to "predetermine defendant's obligations in every situation" and relying on reasonable foreseeability, *Dillon* left it to the "court, on a case-by-case basis ... [to] decide what the ordinary man under such circumstances should reasonably have foreseen." *Id.*

Faced with this murky standard, it is not surprising that the California appellate courts did not apply *Dillon* consistently. Some decisions permitted recovery only where the emotional distress, though foreseeable, was the product of "a sudden and brief event," *Jansen v. Children's Hospital Medical Center*, 31 Cal.App.3d 22, 106 Cal.Rptr. 883, 884 (1973), and the plaintiff had a contemporaneous observance of the event. *Justus v. Atchison*, 19 Cal.3d 564, 139 Cal.Rptr. 97, 565 P.2d 122, 135 (1977). Other cases permitted recovery where the plaintiff came on the scene "within moments" of an accident. *Archibald v. Braverman*, 275 Cal.App.2d 253, 79 Cal.Rptr. 723 (1969). In 1977, the California Supreme Court allowed damages where the plaintiff was a "percipient witness to the impact" causing a third party's injury. *Krouse v. Graham*, 19 Cal.3d 59, 137 Cal. Rptr. 863, 872, 562 P.2d 1022, 1031 (1977). And in *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980), the court permitted a husband to recover for a false diagnosis of syphilis in his wife, thus eliminating the need for a contemporaneous, sudden occur-

rence as a requirement for recovery for emotional distress.

*Ochoa v. Superior Court*, 39 Cal.3d 159, 216 Cal.Rptr. 661, 703 P.2d 1 (1985), marked the beginning of the retreat. There the court limited *Molien's* direct victim recovery to circumstances in which the defendant's negligence was directed at the plaintiff. And in *Thing v. La Chusa*, 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814 (1989), the court noted that *"Dillon's* progeny have created ever widening circles of liability," *Id.*, 257 Cal.Rptr. at 870, 771 P.2d at 819, and that foreseeability "is not a realistic indicator of potential liability and does not afford a rational limitation on recovery," *Id.* at 877, 771 P.2d at 826, and that "there are clear judicial days on which a court can foresee forever." *Id.* at 881, 771 P.2d at 830.

*Thing* does not reject *Dillon; Thing* merely asserts that standards are required to define the perimeter around liability and determines those standards. Thus *Thing* permits a plaintiff to recover for emotional damages "caused by observing the negligently inflicted injury of a third person if, but only if, said plaintiff: (1) is closely related to the injury victim; (2) is present at the scene of the injury producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress ... beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances." *Id.* at 880–881, 771 P.2d at 829–830.

The California saga is not yet complete. Less than a year after the California Supreme Court decided *Thing*, the California Court of Appeals criticized the State of California's law as "analytically confused." *Golstein v. San Francisco Superior Court*, 223 Cal.App.3d 1415, 273 Cal.Rptr. 270, 272 (1990).

### C.

■ The zone of danger rule permits recovery for emotional distress if the plaintiff can show that he or she is threatened with bodily harm by defendant's negligence and emotional distress results from reasonable fear of personal, physical injury. Zone of danger thus permits recovery according to the defendant's already existing duty of care to the plaintiff. It does not, as does *Dillon*, require the defendant to bear a new duty to a potential foreseeable plaintiff. *Bovsun v. Sanperi*, 61 N.Y.2d 219, 473 N.Y.S.2d 357, 461 N.E.2d 843, 847 (1984).

■ Criticism has been levelled against the zone of danger rule as being arbitrary, or as *Dillon* said, hopelessly artificial. It is the nature of the common law process, however, for courts to establish rules. Criticism of a rule as being arbitrary is often no more than a rhetorical device employed by courts to justify rejection of that rule. As Professor Pearson has correctly noted, however, any rule which limits liability short of pure foreseeability is, by its nature, arbitrary. Pearson, *Liability to Bystanders for Negligently Inflicted Emotional Harm—a Comment on the Nature of Arbitrary Rules*, 34 U.Fla.L.Rev. 477 (1982). Such limitations are nonetheless necessary to allow tort law to achieve its purpose of compensating persons injured by the negligence of others without fostering rules of liability which unreasonably inhibit normal human activity. *See* W. Keeton, D. Dobbs, R. Keeton, D. Owen, Prosser and Keeton, The Law of Torts 173 (1984).

■ On reflection, we agree with the New York Court of Appeals. The zone of danger standard is preferable· because "eyewitness limitation provides no rational practical boundary for liability. The distance from the scene and time of notice of the accident are quite inconsequential for the shock more likely results from the relationship to the injured party than what is seen at the accident." *Tobin*, 301 N.Y.S.2d at 559, 249 N.E.2d at 424. It also leads to efficient liability rules by limiting recovery to those directly harmed by the defendant's negligence.

■ We hold, therefore, that in Missouri a plaintiff states a cause of action for negligent infliction of emotional distress upon

injury to a third person only upon a showing: (1) that the defendant should have realized that his conduct involved an unreasonable risk to the plaintiff, (2) that plaintiff was present at the scene of an injury producing, sudden event, (3) and that plaintiff was in the zone of danger, i.e., placed in a reasonable fear of physical injury to his or her own person.

### D.

■ Given its broadest intendment, Asaro's petition does not aver that she was herself endangered by the negligence of the respondents. While appellant was intimately involved with her son's treatment and understandably distressed at the condition of his health, she was not the patient. She faced no personal peril. Her understandable distress follows solely from seeing the harm and suffering endured by her young son. Her petition states no facts, nor permits such inferences as might bring her averments within the zone of danger standard we adopt today.[1] Having invoked no substantive law which would entitle her to relief, the trial court did not err in dismissing Asaro's petition for failure to state a claim.

### III.

The judgment of the trial court is affirmed.

BLACKMAR, C.J., and COVINGTON and HOLSTEIN, JJ., concur.

HIGGINS, J., withdraws dissenting opinion previously filed and files modified dissenting opinion.

RENDLEN and BILLINGS, JJ., dissent and concur in dissenting opinion of HIGGINS, J.

HIGGINS, Judge, dissenting.

With due respect, I find myself in dissent for the reasons that follow.

Rachel Asaro's five-year-old son underwent heart surgery to remove a subaortic fibrous ring. The operating physician reported that all of the ring was removed when in fact some of it remained. The son experienced fainting, pain and other serious difficulties for over a year as a result of the presence of the ring portion. Despite these problems, physicians insisted that all was well. In her pleadings Rachel Asaro alleges she was damaged because defendants denied her son proper treatment in reliance on the incorrect report and negligently interpreted tests, causing her frustration and emotional distress.

Rachel Asaro's petition was dismissed by the trial court on the ground of failure to state a claim upon which relief could be granted. On a motion to dismiss for failure to state a cause of action, the sole question is whether plaintiff's petition states a cause of action under the applicable law. *Shapiro v. Columbia Union National Bank and Trust Co.*, 576 S.W.2d 310, 312 (Mo. banc 1978), *cert. denied*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979). A reviewing court accepts as true the facts properly pleaded, gives the averments a liberal construction, and makes those reasonable inferences fairly deducible from the facts stated. *Stiffelman v. Abrams*, 655 S.W.2d 522 (Mo. banc 1983); *Concerned Parents v. Caruthersville School District*, 548 S.W.2d 554 (Mo. banc 1977).

The majority opinion introduces its denial of Rachel Asaro's day in court by the assertion that this is a case of first impression. I submit this is not a true case of first impression. As recognized by the majority: "In *Bass v. Nooney*, 646 S.W.2d 765 (Mo. banc 1983), this Court abrogated the impact rule and permitted a plaintiff to recover for emotional distress without first showing a contemporaneous traumatic physical injury." The Court's footnoted restraint from digressing "to discuss the extensive debate and differing rules" which

---

1. Indeed, Asaro fails to state a cause of action even under the *Dillon/Thing* standard. The California Court of Appeals denied recovery to parents who claimed emotional distress after their child died as a result of the negligent administration of radiation during treatment of an oth-
erwise curable cancer. The court held that the injury causing event was not capable of sensory perception by the parents and that no recovery for emotional distress could be permitted. *Golstein v. San Francisco Superior Court*, 223 Cal. App.3d 1415, 273 Cal.Rptr. 270 (1990).

flow from so-called "bystander" cases, is in no way a denial of the *Bass* rule in determining whether this plaintiff stated a case in her pleading. In pronouncing its rule this Court made no distinction with respect to plaintiffs "permitted to recover for emotional distress." *Bass* at 772–73. The majority, however, proceeds from footnote 3 to adopt a premise that *Bass* is not authority for Asaro's cause of action. I submit this premise is unjustified.

The majority takes the quotation from the Restatement in *Bass* to be a wholesale adoption of Restatement (Second) of Torts Section 313. This is not so. Notwithstanding the majority's view of the Restatement, *Bass,* after a "painstaking review of this whole subject," held that a plaintiff will be permitted to recover for emotional distress provided: "(1) the defendant should have realized that his conduct involved an unreasonable risk of causing the distress; and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant." *Id.* at 772–73. *Bass* further noted that "the evolution of the law on this subject did not stop with the adoption of the rules set forth in the Restatement." *Id.* at 771. Accordingly, it should not be said that the pronouncement of *Bass* is not available to Rachel Asaro's case.

In her petition, Rachel Asaro alleged she underwent "severe emotional stress and depression, medically diagnosable and significant", and that "[a]ll defendants should have realized that their conduct ... involved an unreasonable risk of causing emotional distress or mental injury to Plaintiff." Accordingly, her petition survives a motion to dismiss under the tests of *Shapiro, Stiffelman* and *Concerned Parents* because it satisfies the requirements of *Bass.*

The majority introduces against this pleader a further limitation or requirement of "zone of danger"; it seeks authority in conflicting discussions from New York and California. No such requirement is made in *Bass;* it should not now be engrafted on the *Bass* rule to defeat plaintiff Asaro's petition. The majority concedes that "criticism has been leveled against the zone of danger rule as being arbitrary or ... hopelessly artificial"—and indeed it is. Yet the majority concludes that no duty is owed by the doctor to the distressed mother because she was not physically threatened by the doctor or placed in "fear of physical injury to ... her own person." By way of contrast *see Martinez v. Long Island Jewish Hillside Medical Center*, 512 N.E.2d 538, 539, 70 N.Y.2d 697, 518 N.Y.S.2d 955, 956 (1978), where the medical care providers negligently gave plaintiff-mother incorrect information concerning her unborn child, as a result of which she decided on an abortion. This caused her emotional distress, as it was against her religious beliefs.

As stated by the court at 512 N.E.2d 538–9, 518 N.Y.S.2d at 956–7:

> Plaintiff does not seek to recover for consequential emotional harm caused by observing or learning of injury or death to a third person.... On the contrary, her mental anguish and depression are the direct result of defendants' breach of a duty owed directly to her in giving her erroneous advice on which she affirmatively acted in deciding to have the abortion. The emotional distress for which she seeks recovery does not derive from what happened to the fetus; it derives from the psychological injury directly caused by her agreeing to an act which, as the jury found, was contrary to her firmly held beliefs.

The majority's limiting concept, now reinjected into the law in Missouri, not only produces an indefensible result in the Asaro case, but immediately suggests the kind of results that can flow from this "hopelessly artificial" standard. For example, it would bar a claim by a husband present in the delivery room when his wife gives birth and the attending physician commits a blunder apparent to all, compounded by remarks to his nurse that dire consequences to the child and mother will result. The father, although not physically threatened, faints and suffers emotional and physical damage. The majority denies possible application of *Bass* and "artificially" denies any "duty" of the doctor to this

father, thus denying any relief for his injury under the law articulated in *Bass.*

Prior to *Bass* in *Todd v. Goostree,* 493 S.W.2d 411 (Mo.App.1973), *followed and implemented,* 528 S.W.2d 470 (Mo.App. 1975), the court held that a workers' compensation claimant who suffered emotional shock when he discovered beneath the wheels of his truck the crushed body of a friend and coworker was injured within the definition provided by the workers' compensation scheme. The driver of the truck was in no danger of being run over nor were the driver and victim related; nevertheless, the court found the driver's emotional distress to be a compensable injury. I submit this case is instructive with respect to the treatment of "bystander" or third-party claims. *See also Jeannelle v. Thompson Medical Company, Inc.,* 613 F.Supp. 346 (E.D.Mo.1985) (*Bass* applied to a "bystander" claim for emotional distress).

I would reverse the judgment of dismissal and remand this case for reinstatement of plaintiff's petition.