Filed 4/26/23

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JAYDE DOWNEY, | D080377 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. RIC1905830) |
| CITY OF RIVERSIDE et al., | |
| Defendants and Respondents. | |

APPEAL from orders of the Superior Court of Riverside County, Harold W. Hopp, Judge. Reversed and remanded with directions.

Rizio Lipinsky Law Firm, Greg Rizio and Eric I. Ryanen for Plaintiff and Appellant.

Phaedra Norton, City Attorney, Michel A. Verska, Senior Deputy City Attorney and Cecila Rojas, Deputy City Attorney for Defendant and Respondent City of Riverside.

CP Law Group, Gary H. Klein and Shelby Kennick for Defendants and Respondents Ara and Vahram Sevacherian.

Plaintiff and appellant Jayde Downey[1] appeals from orders of dismissal entered after the trial court sustained without leave to amend the demurrers of defendants and respondent Ara and Vahram Sevacherian (at times collectively Sevacherian) and the City of Riverside (City) to Downey's operative complaint alleging causes of action for dangerous condition of property and negligence arising out of an automobile collision involving Downey's daughter, Vance. In that pleading, Downey alleged the collision occurred "because [City] created or permitted to exist, a dangerous condition of public property" and because Sevacherian maintained vegetation and trees on their property so as to cause an unsafe obstruction to the view of vehicular traffic. She alleged that because she was on the phone with Vance and heard the sounds of the crash and its aftermath, she was "present, or virtually present" at the scene when the collision happened and had "contemporaneous, sensory awareness of the connection between the injury-causing traffic collision and the grievous injury suffered by [Vance] as a result . . . , thereby causing . . . Downey . . . serious emotional injuries and damages . . . ."

The trial court ruled Downey's allegations were "insufficient to show that Downey had a contemporaneous awareness of the injury-producing event—not just the harm Vance suffered, but also the causal connection between defendants' tortious conduct and the injuries Vance suffered." Downey contends the court erred; that because she contemporaneously perceived the event causing injury to Vance, she adequately alleged a claim for negligent infliction of emotional distress as a bystander. According to

_____

[1] Downey advises that she mistakenly listed her daughter Malyah Vance as an appellant on her notice of appeal, as the trial court did not dismiss Vance's complaint. We refer to Downey as the sole appellant.

2

Downey, that cause of action does not require as an element that the plaintiff visualize the event or show knowledge of the connection between the tortious nature of the defendants' conduct and the victim's physical injuries.

The actual negligent acts or omissions of City and Sevacherian on which Downey bases her complaint are their property maintenance and/or control, which allegedly created dangerous conditions causing the accident. Under *Bird v. Saenz* (2002) 28 Cal.4th 910, 921 (*Bird*), such allegations, without more, would compel us to conclude that Downey, who was not present at the scene, could not know at the time of the collision of the connection between defendants' alleged negligent conduct and the collision or her daughter's injuries. Under *Bird*, liability for negligent infliction of emotional distress cannot be imposed for the *consequences* of City and Sevacherian's assertedly harmful conduct. *Bird* held that it is not enough for a plaintiff to observe " '*the results* of the defendant's infliction of harm,' however 'direct and contemporaneous' " as "[s]uch a rule would eviscerate the requirement . . . that the plaintiff must be contemporaneously aware of the connection between the injury-producing event and the victim's injuries." (*Ibid*.)

However here, Downey at oral argument argued she can allege additional facts to cure the defect, namely, her familiarity with and knowledge and awareness of the intersection and the dangerous conditions created by City and Sevacherian. Under these circumstances, Downey should be given an opportunity to allege facts establishing she had the requisite " 'contemporaneous sensory awareness of the causal connection between the negligent conduct and the resulting injury.' " (*Bird, supra*, 28 Cal.4th at p. 918.) Accordingly, we reverse the orders sustaining the demurrers without

3

leave to amend and direct the trial court to overrule the demurrers with leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

We state the facts from the well-pleaded allegations of the operative third amended complaint. (*Zolly v. City of Oakland* (2022) 13 Cal.5th 780, 786.)

In December 2018, Vance was driving eastbound on Via Zapata and entering the intersection of Via Zapata and Canyon Crest Drive when her vehicle was struck by a vehicle owned and operated by Evan Martin, who was traveling southbound on Canyon Crest Drive. Vance suffered serious personal injuries as a result of the collision. Canyon Crest Drive and Via Zapata are public streets in Riverside. City owned, managed, supervised, controlled, and/or maintained Canyon Crest Drive at or near the intersection at Via Zapata. Sevacherian owned, managed, supervised, controlled, and/or maintained the real property adjacent to the intersection.

At the time of the collision, Downey was on the phone with Vance giving her directions to get to a realtor's office close to the intersection. Downey knew Vance was close to the Via Zapata/Canyon Crest Drive intersection and would have to stop there. Downey heard Vance in a self-talk voice say something like "I'm gonna go left, I'm gonna go left, OK . . . OK . . . OK"—in a manner and tone that Downey understood was consistent with Vance waiting to turn left and mentally "checking off" traffic on Canyon Crest Drive as the traffic approached and cleared the intersection before she could turn. Then, in rapid succession, Downey heard Vance take an audibly sharp, gasping breath; her frightened or shocked exclamation: "Oh!"; and the simultaneous, or near-simultaneous sounds of an explosive metal-on-metal vehicular crash; shattering glass; and rubber tires skidding or dragging

4

across asphalt. Downey had not heard the sounds of skidding tires or squealing brakes in the seconds immediately preceding the impact. Then and there, Downey knew from the combination of the sounds she heard, and from having directed Vance where to drive, that Vance had been injured in a high-velocity motor vehicle collision at or near Via Zapata at Canyon Crest Drive.

As the sound of tires skidding or dragging across asphalt diminished, and having heard no sounds or vocalizations from Vance, Downey understood Vance was injured so seriously she could not speak. Downey immediately left her office, telling people there something like, "I have to go, my daughter has been in a car accident, I have to go." As Downey ran to her car and started driving toward the scene of the incident, she called out to Vance. For a time, Downey heard nothing, but then heard the sound of rustling in Vance's car. Downey started screaming into her phone, "Can you hear me? Can you hear me? I can hear you, can you hear me?" She then heard a male voice say something like, "Would you stop? I'm trying to find a pulse." Downey waited, then asked, "Is she alive?" Moments later, the man said, "She breathed. I got a breath." He then said something like: "What I am going to tell you to do is going to be the hardest thing you will ever do in your life. I want you to hang up your phone and call 911, and have them respond to Via Zapata and Canyon Crest Drive in Riverside."

In November 2019, Downey and Vance sued City and Martin alleging causes of action for dangerous condition of public property, negligence, and negligent infliction of emotional distress.[2] As to City, they alleged in part that the "collision occurred because [City] created, or permitted to exist, a dangerous condition of public property; and/or its employees negligently and

_____

[2]    They also originally sued the County of Riverside, but the County was not named as a defendant in their operative third amended complaint.

carelessly committed, or omitted, acts, so as to cause injury and damage to" them in that "[t]he traffic markings, signals, warnings, medians, and fixtures thereon (or lack thereof), were so located constructed, placed, designed, repaired, maintained, used, and otherwise defective in design, manufacture and warning that they constituted a dangerous condition of public property" because "they created an unreasonable and foreseeable risk of injury and harm to occupants of vehicles in the intersection." They alleged that "[a]ll of these conditions, combined with the condition of the pavement, road design and the speed limit, created a dangerous condition of public property" and "the road itself and the surrounding area was so constructed, placed, designed, repaired, maintained, used, and otherwise defective in design, manufacture and warning that the involved section of road constituted a dangerous condition of public property [by] creat[ing] an unreasonable and foreseeable risk of injury and harm to occupants of vehicles in the intersection." They alleged City knew of numerous collisions in or about the intersection before the accident, and had sufficient time and resources to correct the conditions and take preventative measures. Downey alleged she was on the telephone with Vance and heard the collision through the phone.

Plaintiffs eventually filed a second amended complaint adding the Sevacherians as parties. They alleged the Sevacherians maintained their property—particularly by failing to trim vegetation and trees—in such a condition to make it unsafe by obstructing the view of traffic turning from Via Zapata onto Canyon Crest Drive and causing the collision between Vance and Martin. City answered the complaint, but the Sevacherians demurred on grounds Downey did not see the injury-producing event at the time it occurred. The court then considered supplemental briefing concerning Downey's claim for negligent infliction of emotional distress. In that briefing,

6

the Sevacherians argued case law required that Downey have a "contemporaneous perception of what caused the injury to their close relative (i.e. an awareness of the causal connection between the defendant's infliction of harm and the injury)" and Downey could not allege she was aware that the condition of their property caused Vance's injury.

The court sustained the Sevacherians' demurrer with leave to amend. In part, it stated that "[t]he essence of bystander recovery is that the plaintiff experiences a contemporary sensory awareness of the connection between an injury-causing event and a close relative's injury." The court ruled Downey's allegations were insufficient: ". . . Downey alleges she heard a collision and 'first responders' attempts to revive her daughter.' . . . [She] cites no decision that holds that an auditory perception alone, without further awareness of an injury-causing event, is sufficient."

Downey and Vance filed a third amended complaint. In addition to the specific allegations about her call with Vance before, during and after the collision, Downey alleged she at all relevant times "was present, or virtually present, at the scene of the collision, at the time of the collision and, then and there, had contemporaneous, sensory awareness of the connection between the injury-causing traffic collision and the grievous injury suffered by her daughter as a result of the collision, thereby causing [Downey] suffered [*sic*] serious emotional injuries and damages as a result of these events and conditions at the scene . . . ."

Both City and the Sevacherians filed demurrers. City argued Downey could not allege the elements required for bystander recovery of negligent infliction of emotional distress: "The crux of plaintiffs' complaint against the City is that cars parked on Canyon Crest Drive obstructed Vance's view and the speed limit on Canyon Crest [Drive] was too high. . . . Downey was on the

7

phone with Vance but was not at the scene and therefore she was unable to use any of her senses to perceive any alleged dangerous roadway conditions at the time of Vance's traffic collision, especially any parked cars that allegedly blocked Vance's view or how fast any cars were traveling on Canyon Crest Drive." (Some capitalization omitted.) It asked the court to sustain its demurrer without leave to amend as Downey had been provided an opportunity to amend her complaint on those issues.

In opposition to City's demurrer, Downey and Vance argued Downey had experienced the collision between Vance and Martin as it actually occurred, and was aware not only of that event but also the subsequent first responder attempts to revive Vance. They argued it was through the nature of modern technology that Downey was "sensorily present at the scene" and as a result suffered serious emotional injuries and damages. According to plaintiffs, while a plaintiff "must be contemporaneously aware of the injury-producing event and that it is causing harm to plaintiffs [*sic*] relative, contemporaneous awareness of the exact manner in which defendant's tortious conduct caused the event and resulting injuries is not an element of the [negligent infliction of emotional distress] claim." They argued plaintiffs need not show he or she knew of the exact nature of the defendant's tortious conduct. They made the same arguments in opposition to the Sevacherians' demurrer.

The court sustained the demurrers without leave to amend. It ruled that while plaintiffs had added certain facts to the operative complaint, namely allegations that Downey was "present, or virtually present at the scene of the collision, and . . . had contemporaneous, sensory awareness of the connection between the injury-causing traffic collision and the grievous injury suffered by [Vance] as a result of the collision"—the allegations were

8

"insufficient to show that Downey had a contemporaneous awareness of the injury producing event—not just the harm Vance suffered, but also the causal connection between defendants' tortious conduct and the injuries Vance suffered." Plaintiffs timely filed this appeal.[3]

## DISCUSSION

### I. *Standard of Review*

The review standard is settled. " 'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] ' " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed." . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " ' " (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; see also *Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370.)

" 'If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer. "[W]e are not limited to plaintiffs' theory of recovery in testing the sufficiency of their complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal

---

[3] The court entered orders dismissing City and the Sevacherians with prejudice from the third amended complaint, as the case apparently proceeded against Martin. Though Downey's notice of appeal refers to a judgment entered following the sustaining of a demurrer, we construe the notice of appeal as referring to the October and November 2021 orders dismissing City and the Sevacherians.

9

theory . . . ." ' " (*Zhang v. Superior Court, supra*, 57 Cal.4th at p. 370, see also *id*. at p. 383.) "We review the trial court's ruling, not the reasons stated for the ruling. [Citations.] The rationale for this standard is that there can be no prejudice from an error in logic or reasoning if the decision itself is correct." (*Mireskandari v. Gallagher* (2020) 59 Cal.App.5th 346, 357-358; see also *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980-981.)

When a demurrer is sustained without leave to amend, " 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) " ' "The plaintiff has the burden of proving that [an] amendment would cure the legal defect, and may [even] meet this burden [for the first time] on appeal." ' " (*Ko v. Maxim Healthcare Services, Inc.* (2020) 58 Cal.App.5th 1144, 1150.)

## II. *Legal Principles Pertaining to a Cause of Action for Negligent Infliction of Emotional Distress to a Bystander*

The negligent causing of emotional distress is not an independent tort, but the tort of negligence. (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1072.) As such, "the traditional elements of duty, breach of duty, causation, and damages apply." (*Ibid*.; *Fortman v. Förvaltningsbolaget Insulan AB* (2013) 212 Cal.App.4th 830, 834 (*Fortman*); *McMahon v. Craig* (2009) 176 Cal.App.4th 1502, 1509.) For claims of negligence that are alleged to have caused emotional distress to a percipient witness to the harm, "the class of potential plaintiffs could be limitless, resulting in the imposition of liability out of all proportion to the culpability of the defendant . . . ." (*Burgess*, at p. 1073.) As a result, the California Supreme Court has put in place "three mandatory requirements" (*Bird, supra*, 28 Cal.4th at p. 915; *Fortman*, at

10

p. 835) to circumscribe the class of bystanders to whom a defendant owes a duty of care to avoid negligently inflicting emotional distress. (*Burgess*, at p. 1073.) " '[A] plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person if, *but only if,* said plaintiff: (1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress—a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances.' " (*Bird*, at p. 915, quoting *Thing v. La Chusa* (1989) 48 Cal.3d 644, 667-668 (*Thing*).)

At issue here, as in *Bird*, is the second requirement. (*Bird*, *supra*, 28 Cal.4th at p. 916.) *Bird* considered in the summary judgment context a claim of negligent infliction of emotional distress against treating physicians based on alleged medical malpractice. (*Id.* at p. 912.) The plaintiffs, daughters of a woman undergoing a surgical procedure to insert a venous catheter, presented evidence that two of them witnessed their mother, who appeared blue, being rushed down a hallway surrounded by doctors. (*Id.* at p. 913.) Doctors told the two plaintiffs (one of whom had arrived at the hospital after the first had been told about the transection) that their mother's artery or vein had been nicked or transected and related to one of them that doctors had to insert a drainage tube into their mother's chest to keep her alive until a vascular surgeon's arrival. (*Ibid.*) The plaintiffs alleged "they 'were all present at the scene of the injury-producing events at issue herein at the time when they occurred' and that they 'were all aware that Defendants, and each of them, were causing injury to their mother . . . .' " (*Id.* at p. 914.) In opposing summary judgment, they admitted they were not present in the

11

operating room when their mother's artery was transected, but argued the "relevant injury-producing event" also included the doctors' failure to diagnose and treat the damaged artery. (*Ibid*.) The two plaintiffs presented declarations stating that by the time the second daughter had arrived at the hospital, both knew their mother was severely injured and that the injury was continuing, and that at the time she was rolled through the hallway to surgery, both were aware she was bleeding to death as they watched. (*Ibid*.)

The Court of Appeal concluded the evidence presented a triable issue of fact precluding summary judgment, but the Supreme Court disagreed and reversed. (*Bird*, *supra*, 28 Cal.4th at pp. 912, 914.) *Bird* reviewed its earlier decisions on the negligent infliction claim, focusing on the requirement of a plaintiff's presence and perception of injury. It acknowledged that it had held in *Thing*, *supra*, 48 Cal.3d 644 that a negligent infliction of emotional distress claim failed where a plaintiff mother became aware that a car accident injured her minor child only when someone told her it had occurred, and she rushed to the scene to see her child injured and unconscious on the road. (*Bird*, at p. 916.) "Under these facts, the plaintiff could not satisfy the requirement of having been present at the scene of the injury-producing event at the time it occurred and of having then been aware that it was causing injury to the victim." (*Ibid*., citing *Thing*, *supra*, 48 Cal.3d at p. 668.) The *Bird* court explained that in *Thing*, it had disapproved cases suggesting a "negligent actor is liable to all persons 'who may have suffered emotional distress on viewing or learning about the injurious *consequences* of his conduct' rather than on viewing the injury-producing *event*, itself." (*Bird*, at p. 916, quoting *Thing*, at p. 668, disapproving *Nazaroff v. Superior Court* (1978) 80 Cal.App.3d 553 and *Archibald v. Braverman* (1969) 275 Cal.App.2d 253.) It noted both *Nazaroff* and *Archibald* permitted such claims by

12

plaintiffs "who had seen the immediate aftereffects of injury-producing events"—in *Nazaroff*, seeing a child being pulled out of a pool and being resuscitated and in *Archibald*, viewing injuries moments after gunpowder exploded in a child's hand—"but not the events themselves." (*Bird*, at p. 916, fn. 2.)

Under these principles, the plaintiffs could not state a claim based on the transection of their mother's artery, as none of them were present in the operating room at the time that event occurred, and they first learned of an accident when a physician told them and they "saw some of the injurious consequences." (*Bird*, *supra*, 28 Cal.4th at p. 916.) The court continued: "To be sure, *Thing*'s requirement that the plaintiff be contemporaneously *aware* of the injury-producing event has not been interpreted as requiring visual perception of an impact on the victim. A plaintiff may recover based on an event perceived by other senses, so long as the event is contemporaneously understood as causing injury to a close relative. [Citation.] But this slight degree of flexibility in the second *Thing* requirement does not aid plaintiff here because they had no sensory perception whatsoever of the transection at the time it occurred.[4] Thus, defining the injury-producing event as the transection, plaintiffs' claim falls squarely within the category of cases the second *Thing* requirement was intended to bar." (*Bird*, at pp. 916-917.) In stating this rule, the court noted: "On the other hand, someone who hears an accident but does not then know it is causing injury to a relative does not have a viable claim for [negligent

---

[4]     *Bird*'s reliance on *Wilks v. Hom* (1992) 2 Cal.App.4th 1264, 1272-1273 for this principle was limited to observing that any sensory perception permits a plaintiff to recover for negligent infliction of emotional distress. (*Bird*, *supra*, 28 Cal.4th at pp. 916-917.) *Bird* did not purport to draw any broader conclusions from *Wilks*, which involved a jury instruction challenge.

infliction of emotional distress], even if the missing knowledge is acquired moments later." (*Id*. at p. 917, fn. 3.)

The court turned to the plaintiffs' attempt to redefine the injury-producing event as the doctors' failure to diagnose their mother's injury and treat it while it was occurring. (*Bird*, *supra*, 28 Cal.4th at p. 917.) "The problem with defining the injury-producing event as defendants' failure to diagnose and treat the damaged artery is that plaintiffs could not meaningfully have perceived any such failure. Except in the most obvious cases, a misdiagnosis is beyond the awareness of lay bystanders. . . . Even if plaintiffs believed, as they stated in their declarations, that their mother was bleeding to death, they had no reason to know that the care she was receiving to diagnose and correct the cause of the problem was inadequate. While they eventually became aware that one injury-producing event—the transected artery—had occurred, they had no basis for believing that another, subtler event was occurring in its wake." (*Ibid*.)

The court explained it was not holding a layperson could never perceive medical negligence, using an example of a layperson witnessing the mistaken amputation of a relative's sound limb. (*Bird*, *supra*, 28 Cal.4th at p. 918.) But it emphasized the same could not be assumed of medical malpractice generally. (*Ibid*.) It found another medical malpractice case—*Golstein v. Superior Court* (1990) 223 Cal.App.3d 1415 (*Golstein*)—to be "on point . . . ." In *Golstein*, parents watched their child undergo radiation therapy, and learned later when he developed radiation poisoning that he had been lethally overexposed at the time. (*Bird*, at p. 918.) Thus, "[w]hile the plaintiffs had observed the procedure that was later determined to have been an injury-producing event, they were not then aware the treatment was causing injury." (*Ibid*.) The *Golstein* plaintiffs had argued it was unjust to

14

deny them recovery in a situation where the fatal dosage of radiation was invisible, when the rules originated with visible events such as accidents. (*Bird*, at p. 918.) *Bird* favorably cited the *Golstein* Court of Appeal's reasoning rejecting the point: "Were it not for *Thing*[, *supra*, 48 Cal.3d 644], . . . the plaintiffs 'would have a compelling case. However, we interpret *Thing*'s policy statement as a requirement that [negligent infliction of emotional distress] plaintiffs experience a contemporaneous sensory awareness of the causal connection between the negligent conduct and the resulting injury. . . . [T]he plaintiff must be "present at the scene of the injury-producing event at the time it occurs and . . . then aware that it is causing injury to the victim . . . ." ' " (*Bird*, at p. 918, quoting *Golstein*, at pp. 1427-1428, quoting *Thing*, at p. 668.)

Bird went on to discuss other medical malpractice cases decided after *Thing*, including *Wright v. City of Los Angeles* (1990) 219 Cal.App.3d 318 (*Wright*), and the main case plaintiffs relied on, *Ochoa v. Superior Court* (1985) 39 Cal.3d 159 (*Ochoa*). *Bird* pointed out that in *Wright*, the court held a plaintiff could not maintain a negligent infliction of emotional distress claim when she watched a paramedic conduct an exam that did not detect a type of shock. "While the relative was 'present at the scene at the time the injury-producing event occurred,' there was no evidence 'he was *then* aware [that the decedent] was being injured by [the paramedic's] negligent conduct.' " (*Bird*, *supra*, 28 Cal.4th at p. 919, quoting *Wright*, at p. 350.) In *Ochoa*, a mother sued authorities in a juvenile detention facility after they ignored her son's serious symptoms of pneumonia. (*Bird*, at p. 919.) According to *Bird*, *Ochoa* anticipated *Thing*'s formula when it held recovery was permitted " 'when there is observation of the defendant's conduct and the child's injury *and contemporaneous awareness the defendant's conduct or lack*

15

*thereof is causing harm* to the child . . . .' " (*Bird*, at p. 919, quoting *Ochoa*, at p. 170.)  *Bird* explained that in *Ochoa*, unlike other cases, the injury-producing event was the authorities' failure to respond significantly to symptoms requiring immediate medical attention, an omission that "is not necessarily hidden from the understanding awareness of a layperson" unlike a misdiagnosis, unsuccessful treatment, or treatment that in retrospect turns out to have been inappropriate.  (*Bird*, at pp. 919-920.)

 *Bird* discussed another case that it held "cannot be reconciled" with *Thing*, in which a mother held her child as he was injected with an incorrectly prepared intravenous solution and saw him convulse and eventually lapse into a coma.  (*Bird*, *supra*, 28 Cal.4th at p. 920, discussing *Mobaldi v. Regents of University of California* (1976) 55 Cal.App.3d 573 (*Mobaldi*).)  The *Mobaldi* court found " 'no significance in the plaintiff's lack of awareness that the defendant's conduct inflicting the injury is negligent' " as long as her " 'observation of the results of the defendant's infliction of harm . . . is direct and contemporaneous . . . .' " (*Bird*, at p. 921, citing *Mobaldi*, at p. 583.)  *Bird* criticized that conclusion, observing it did not survive its decision in *Thing*:  "*Mobaldi* . . . may well have been correct in saying that a plaintiff need not contemporaneously understand the defendant's conduct as *negligent*, as opposed to *harmful*.  But the court confused awareness of negligence, a legal conclusion, with contemporaneous, understanding awareness of the event as causing harm to the victim.  To borrow the *Mobaldi* court's own example, the bystander to the fatal traffic accident knows the driver's conduct has killed the child, even though she may not know the driver was drunk.  One takes a giant leap beyond that point, however, by imposing liability for [negligent infliction of emotional distress] based on nothing more than a bystander's 'observation of *the results* of the

16

defendant's infliction of harm,' however 'direct and contemporaneous.' [Citation.]  Such a rule would eviscerate the requirement of *Thing* . . . that the plaintiff must be contemporaneously aware of the connection between the injury-producing event and the victim's injuries." (*Bird,* at pp. 920-921.) *Bird* again adopted the *Golstein* court's analysis of *Mobaldi*:  " 'The actual negligent act [in *Mobaldi*]' . . . 'was not simply the injection itself, but the use of the wrong solution, an act which plaintiff, as a medical layperson, could not meaningfully perceive: what appeared to her as an innocent-seeming injection was actually the conduit of medical negligence and the cause of her child's injuries.  Unlike an explosion, traffic accident, or electrocution, the injury-causing event in *Mobaldi* was essentially invisible to the plaintiff and not a component of her emotional trauma.' " (*Bird*, at p. 921, quoting *Golstein*, *supra*, 223 Cal.App.3d at p. 1423.)

Following *Bird*, the court in *Fortman* addressed a negligent infliction of emotional distress claim in a strict products liability context, holding a plaintiff did not have a viable claim where she witnessed her brother die while scuba diving due to an equipment malfunction.  (*Fortman, supra*, 212 Cal.App.4th at p. 832.)  At the time, the plaintiff believed her brother was having a heart attack, but she later learned a product manufactured by the defendant had become lodged in his breathing equipment, preventing him from getting enough air.  (*Ibid*.)  Explaining it was bound and limited by the mandatory guidelines discussed above (*Bird*, *supra*, 28 Cal.4th at p. 915; *Thing*, *supra*, 48 Cal.3d 644), the court reviewing a summary judgment held the second factor was not met:  "Fortman witnessed her brother's injury, but like the parents in *Golstein*[, *supra*, 223 Cal.App.3d 1415] who were unaware of the radiation overdose, Fortman had no contemporaneous awareness of the causal connection between the company's defective product and her brother's

17

injuries." (*Fortman*, at p. 845.)  It declined "to hold a product manufacturer strictly liable for emotional distress when the plaintiff observes injuries sustained by a close relative arising from an unobservable product failure" or it otherwise "would eviscerate the second *Thing* requirement."  (*Fortman*, at p. 844.)[5]

*Fortman* acknowledged that the plaintiff's emotional distress was no less grievous than that of a plaintiff who had a viable claim, but it explained it was bound by *Thing*:  "*Thing* drew a line by limiting the class of potential plaintiffs in [negligent infliction of emotional distress] cases, precluding recovery when the bystander lacks contemporaneous awareness of the injury-producing event.  [Citation.]  The Supreme Court in *Thing* admittedly created an arbitrary distinction on bystander recovery, stating 'drawing arbitrary lines is unavoidable if we are to limit liability and establish meaningful rules for application by litigants and lower courts.' "  (*Fortman*, *supra*, 212 Cal.App.4th at pp. 845-846.)

---

[5]     *Fortman* distinguished another products liability case, *Ortiz v. HPM* (1991) 234 Cal.App.3d 178, involving a plaintiff's lawsuit against a plastic injection molding machine manufacturer to recover emotional injuries she suffered when she saw her husband trapped in the machine.  (*Fortman*, *supra*, 212 Cal.App.4th at p. 842.)  At the time the plaintiff arrived at the scene, the machine was still operating and an air cylinder was pressing across her husband's chest.  (*Fortman*, at pp. 842-843, citing *Ortiz*, 234 Cal.App.4th at p. 184.)  *Fortman* pointed out that in *Ortiz*, the plaintiff satisfied the second *Thing* prong because she was aware the defendant's machine was injuring her husband even though she could not perceive the full extent of his injuries related to oxygen deprivation.  (*Fortman*, at p. 843, citing *Ortiz*, at p. 186.)

III. *Analysis*

A. *Downey's Reliance on* Delta Farms Reclamation District v. Superior Court

We begin with a brief and undeveloped point Downey makes in the portion of her brief relating the elements of a bystander negligent infliction of emotional distress claim. She cites a case predating *Bird* and *Thing*, *Delta Farms Reclamation District v. Superior Court* (1983) 33 Cal.3d 699 (*Delta Farms*), for the proposition that "[b]ystander emotional distress falls within the ambit of liability under Government Code [section] 835 for dangerous condition of public property."

To the extent Downey intends by the point that she can maintain a negligent infliction of emotional distress cause of action based on the allegations of her complaint merely because she alleges a dangerous condition of public property, we cannot agree that such a cursory assertion, without more analysis, establishes that proposition.

But *Delta Farms* no longer governs the question of whether a plaintiff may state a cause of action for negligent infliction of emotional distress in the context of a government claim for a dangerous condition of public property. In that case, the plaintiffs, two mothers and an aunt who witnessed their 15-year-old daughters and niece drown on public property, alleged that the girls stepped off a hidden shelf in a waterway, and that the defendant knew or should have known of the dangerous condition, knew visitors frequented the area and were likely to wade or swim there, but failed to warn of the latent dangers. (*Delta Farms*, *supra*, 33 Cal.3d at p. 702.) On a demurrer, the California Supreme Court rejected the defendant's contention that recovery for negligent infliction of emotional distress by the relatives who witnessed the drownings was not covered by statute and was thus barred by Government Code section 815. It said: "[Government Code s]ection 835

19

imposes liability for a 'dangerous condition [which] created a reasonably foreseeable risk of the kind of injury which was incurred . . . .'  The term 'injury' is defined in [Government Code] section 810.8 as meaning 'death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, *of such nature that it would be actionable if inflicted by a private person*.'  A 'dangerous condition' is defined in [Government Code] section 830 as meaning a 'condition of property that creates a substantial . . . risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used.'  The Law Revision Comment to [Government Code] section 830 makes it clear that the injury resulting from a dangerous condition may be an emotional one:  'The definition of "dangerous condition" is quite broad because it incorporates the broad definition of "injury" contained in [Government Code s]ection 810.8.  Thus the danger involved need not be a danger of physical injury; it may be a danger of injury to intangible interests so long as the injury *is of a kind that the law would redress if it were inflicted by a private person*.' "  (*Delta Farms*, at pp. 710-711, italics added.)

The *Delta Farms* court continued:  "Under these provisions, an injury to 'feelings' is compensable if it 'is of the kind that the law would redress if it were inflicted by a private person.'  This imports a common law meaning into the statute which would include emotional distress."  (*Delta Farms, supra*, 33 Cal.3d at p. 711.)  Citing *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 and *Dillon v. Legg* (1968) 68 Cal.2d 728, the *Delta Farms* court stated:  "Emotional distress is a compensable injury when inflicted by a private person if the risk of such harm to plaintiff was reasonably foreseeable to defendant.  [Citation.]  This test of liability dovetails with the requirement

20

of [Government Code] section 835 that the 'dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred.' " (*Delta Farms*, at p. 711.) The court concluded: "Real parties have alleged such a foreseeable risk. It is predictable that adult relatives would accompany children who are wading in the canal and that they would suffer emotional distress from watching them drown. [Government Code s]ection 835 encompasses that type of injury." (*Ibid.*)

But after *Delta Farms*, the court limited the parameters of a negligent infliction of emotional distress claim in *Thing, supra*, 48 Cal.3d 644, and specifically rejected the "nonexclusive guidelines" it had set out in *Dillon v. Legg, supra*, 68 Cal.2d 728 to assess foreseeability and thus duty. (See *Bird, supra*, 28 Cal.4th at p. 915.) *Thing* made clear that foreseeability was not an adequate test to determine the right to recover for the negligent causing of an intangible injury: "It is apparent that reliance on foreseeability of injury alone in finding a duty, and thus a right to recover, is not adequate when the damage sought are for an intangible injury. In order to avoid limitless liability out of all proportion to the degree of a defendant's negligence, and against which it is impossible to insure without imposing unacceptable costs on those among whom the risk is spread, the right to recover for negligently caused emotional distress must be limited." (*Thing*, at p. 664[6]; see also

---

[6] *Thing* also said: "Even if it is 'foreseeable' that persons other than closely related percipient witnesses may suffer emotional distress, this fact does not justify the imposition of what threatens to become unlimited liability for emotional distress on a defendant whose conduct is simply negligent. Nor does such abstract 'foreseeability' warrant continued reliance on the assumption that the limits of liability will become any clearer if lower courts are permitted to continue approaching the issue on a 'case-to-case' basis some 20 years after *Dillon* [*v. Legg, supra,* 68 Cal.2d 728]." (*Thing, supra,* 47 Cal.3d at p. 667.)

*Burgess*, *supra*, 2 Cal.4th at p. 1074 ["The great weight of this criticism [of *Molien v. Kaiser Foundation Hospitals*, *supra*, 27 Cal.3d 916] has centered upon the perception that *Molien* introduced a new method for determining the existence of duty, limited only by the concept of foreseeability. To the extent that *Molien* . . . stands for this proposition, it should not be relied upon and its discussion of duty is limited to its facts. As recognized in *Thing,* 'it is clear that foreseeability of the injury alone is not a useful "guideline" or a meaningful restriction on the scope of [an action for damages for negligently inflicted emotional distress]' "].)

Even if *Delta Farms* still governed the question presented here, the Government Code definition of injury on which *Delta Farms* relies provides that an intangible injury is compensable only if it "*is of a kind that the law would redress if it were inflicted by a private person.*" (*Delta Farms*, *supra*, 33 Cal.3d at p. 711, italics added; see also Government Code section 810.8 [defining "injury"].) Thus, the pertinent statutes now incorporate the limitations on liability for negligent infliction of emotional distress put in place by *Thing* and *Bird*. We turn to whether Downey's allegations in the present complaint state such a claim given those restrictions.

B. *Under the Allegations of the Present Complaint, Downey Cannot Maintain a Cause of Action for Negligent Infliction of Emotional Distress*

Downey advances two contentions to challenge the court's order. First, she argues that with modern technology, she was in fact present at the scene and contemporaneously aware of the event causing injury to Vance. Second, she maintains that "contemporaneous awareness of a causal connection between defendants' tortious misconduct and [a] victim's physical injuries is not an element of a bystander [negligent infliction of emotional distress] claim arising from a motor vehicle collision."

22

We agree Downey has adequately alleged she contemporaneously sensed auditorily the accident and the fact Vance was injured. But our agreement on that point does not resolve whether the complaint, as presently styled, alleges a viable negligent infliction of emotional distress cause of action against City and Sevacherian. As set out above, *Bird* establishes that a plaintiff's visual perception of an event is not necessarily required: a viable negligent infliction of emotional distress claim may be stated by a plaintiff who perceives an event by "other senses" as long as they contemporaneously understand the event caused injury to their close relative. (*Bird*, *supra*, 28 Cal.4th at pp. 916-917; see also *Fortman*, *supra*, 212 Cal.App.4th at p. 841.) Downey alleges she heard "the simultaneous, or near-simultaneous sounds of an explosive metal-on-metal vehicular crash; shattering glass; and rubber tires skidding or dragging across asphalt" and when that diminished, she heard "no sounds or vocalizations from her daughter" and thus "understood her daughter was injured so seriously she could not speak." She further alleged a man told her telephonically he was trying to "find a pulse" and to call 911. Given these allegations, Downey would have no impediment to assert a claim for negligent infliction of emotional distress merely because she perceived the car accident and its injurious aftermath via listening to it on her phone, at least as against the negligent actors involved in the crash. (Accord, *Ko v. Maxim Healthcare Services, supra*, 58 Cal.App.5th at pp. 1146-1147 [parents stated a cause of action by allegations they watched a livestream video with audio of a healthcare worker abuse their son; "technology for virtual presence has developed dramatically, such that it is now common for families to experience events as they unfold through the livestreaming of video and audio. Recognition of an [negligent infliction of emotional distress] claim where a person uses modern technology to

23

contemporaneously perceive an event causing injury to a close family member is consistent with the Supreme Court's requirements for [such] liability and the court's desire to establish a bright-line test for bystander recovery"].)

But Downey's claim at issue on appeal is against City and Sevacherian for negligence in maintaining certain alleged dangerous conditions on their property. We take guidance from *Bird*'s discussion of *Ochoa*, *Wright* and *Golstein* in the medical malpractice context, and *Fortman* in the products liability context. *Bird* approvingly cited authority indicating the focus must be on the defendant's " 'actual negligent act' " (*Bird, supra*, 28 Cal.4th at p. 921, quoting *Golstein, supra*, 223 Cal.App.3d at p. 1423) and plaintiff's " 'contemporaneous sensory awareness of the causal connection between the *negligent conduct* and the resulting injury.' " (*Bird,* at p. 918, quoting *Golstein*, at pp. 1427-1428, italics added; accord, *Fortman, supra*, 212 Cal.App.4th at p. 845 [focusing on the plaintiff's "awareness of the causal connection between the *company's defective product* and her brother's injuries", italics added].)

Downey's complaint shows the actual act alleged to be negligent is the defendants' maintenance of a dangerous condition on their property, which ultimately was alleged to have caused the automobile collision. In these circumstances, we cannot say the present allegations establish Downey contemporaneously or meaningfully understood the causal connection between the defendants' harmful conduct—their deficient traffic signals/markings or insufficient landscaping—and Vance's injury. In this way, these circumstances are like those in *Bird* and other medical

24

malpractice cases and *Fortman* in which the plaintiffs were unable to perceive the defendant's conduct as causing the harm suffered by the victim.[7]

Downey relies on a California law practice guide and *Ochoa*'s discussion of *Mobaldi* to argue that a plaintiff to state a viable negligent infliction of emotional distress claim need not show he or she knew of the tortious nature of the defendant's conduct. As *Bird* explained, *Mobaldi* was not necessarily incorrect in permitting liability where a bystander knows a driver's conduct has killed the victim, even though he or she may not know the driver was drunk. (*Bird*, *supra*, 28 Cal.4th at pp. 920-921.) But extending that reasoning to this context of a claimed negligent maintenance of a dangerous property condition, we cannot reach the same result, as there are no allegations showing at the time of the accident, Downey was "*then* aware*" (*Golstein*, 223 Cal.App.3d at p. 1428) that City's or Sevacherian's acts or omissions with respect to the traffic markings at the intersection or landscaping of surrounding property caused the accident or injured Vance. Even if the claimed dangerous conditions were visible and obvious, Downey's complaint establishes she was not physically present at the scene to observe them.

*Bird* also made clear in disapproving *Mobaldi* that one cannot impose liability for negligent infliction of emotional distress "based on nothing more than a bystander's 'observation of *the results* of the defendant's infliction of harm' however 'direct and contemporaneous.' " (*Bird*, *supra*, 28 Cal.4th at p. 921.) Such is the case here, where the alleged *result* or *consequence* of City and Sevacherian's claimed negligence was the accident.

Downey asks us to follow federal authorities, *In re Air Crash Disaster Near Cerritos, Cal., On August 31, 1986* (9th Cir.1992) 967 F.2d 1421 and *Walsh v. Tehachapi Unified School District* (E.D.Cal., Aug. 26, 2013, No.

25

7       The dissent characterizes our opinion as "effectively adopt[ing] a rule that bystander-plaintiffs must allege and prove that they were aware of *each defendant's* allegedly tortious conduct." (Dis. opn. at p. 4.) We do not hold the plaintiff must know the precise nature of the defendant's negligence; we apply the *Bird* court's analysis in a similar unique context—a complaint alleging defendant's maintenance of a dangerous condition of property caused a car accident—to hold that a plaintiff must be aware of the connection between the defendant's conduct and the injury. This conclusion is in fact supported by *Ochoa, supra*, 39 Cal.3d 159, which the dissent asserts expressly disclaimed any suggestion that a bystander plaintiff must be aware of the tortious nature of the defendant's actions. (Dis. opn. at p. 4.) *Ochoa* actually holds that recovery for negligent infliction of emotional distress is permitted "when there is observation of the defendant's conduct and the [accident victim's] injury and the contemporaneous awareness the defendant's conduct or lack thereof is causing harm to the [victim] . . . ." (*Ochoa*, at p. 170.) In other words, the court permits recovery where the plaintiff connected the injury with the defendant's conduct. That is not the case here as to these defendants, unless Downey is somehow familiar with the problems with the intersection and surrounding landscaping and the connection between those conditions and the accident. Our conclusion is also supported by *Thing, supra*, 48 Cal.3d 644, which addressed *Ochoa*'s observation that a plaintiff need not be aware that the defendant's conduct was tortious. After acknowledging *Ochoa*'s language to that effect, *Thing* clarified that, "In sum, however, as to 'bystander' [negligent infliction of emotional distress] actions, *Ochoa* held only that recovery would be permitted if the plaintiff observes both the defendant's conduct and the resultant injury, and is aware at that time that the conduct is causing the injury." (*Thing*, at p. 661.) *Thing* held that the Court of Appeal in that case erred by concluding *Ochoa* stood for the proposition that a negligent infliction of emotional distress plaintiff need not witness the defendant's conduct. The dissent's rule, which disregards the "specific acts underlying [plaintiff's negligent infliction of emotional distress] claim" deemed important in *Bird* (*Bird, supra*, 28 Cal.4th at p. 912), would result in the " 'ever widening circles of liability' " the California Supreme Court had sought to avoid by putting its limitations in place. (See *Bird*, at p. 914.) For example, if the driver hit Downey's daughter's vehicle because he was under the influence of medication prescribed by a physician or as a result of an undiagnosed medical condition, Downey could maintain a cause of action against that physician merely because she perceived the car accident, having no knowledge or awareness whatsoever of the physician's role in it.

26

1:11–cv–01489 LJO JLT) 2013 WL 4517887, as well as *Zuniga v. Housing Authority* (1995) 41 Cal.App.4th 82, questioned on other grounds in *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1138-1139.)  In *Fortman, supra*, 212 Cal.App.4th 830, the court examined *Air Crash Disaster* and *Zuniga*, and found them distinguishable as not involving a "injury-producing event that cannot be contemporaneously perceived." (*Fortman, supra*, 212 Cal.App.4th at p. 839.)  We are not bound by lower federal decisions, including those of the Ninth Circuit.  (*People v. Avena* (1996) 13 Cal.4th 394, 431; *McLaughlin v. Walnut Properties, Inc.* (2004) 119 Cal.App.4th 293, 297.)  But we agree with *Fortman*.  *Fortman* viewed the "injury-producing event" as defendant's assertedly negligent act, there, the manufacture of a defective product, which could not be contemporaneously perceived by the plaintiff.  (See *Fortman*, at p. 845 ["Fortman had no contemporaneous awareness of the causal connection between the *company's defective product* and her brother's injuries," italics added].)  Because here, the complaint does not presently allege defendants' negligent acts that caused the accident were observable to Downey at the time of the collision, the cited cases are inapposite.[8]

---

[8]    We decline to follow *Walsh v. Tehachapi Unified School District, supra*, 2013 WL 4517887 to the extent it is inconsistent with our conclusions. Downey points out *Walsh* states that *Bird* and *Fortman* "do not stand . . . for the much broader proposition that a plaintiff must be aware of the causal connection between the victim's injuries and the defendant's negligent conduct."  She would have us follow *Walsh* and limit *Bird* and *Fortman* to the scenario where the negligent act and the injury-producing event are the same.  We cannot ignore *Bird* and *Fortman*'s focus on the defendant's negligent conduct or the actual negligent act.  In our view, *Bird* plainly interprets the second *Thing* prong to require contemporaneous perception of a causal connection between the defendant's negligent act and the injury suffered to impose negligent infliction of emotional distress liability.

Downey also cites *Keys v. Alta Bates Summit Medical Center* (2015) 235 Cal.App.4th 484, but in this appeal after a jury trial, the Court of Appeal upheld a verdict in favor of plaintiffs who viewed their mother/sister struggle to breath after surgery and witnessed inadequate efforts by the respiratory therapist to assist the situation. (*Keys*, at p. 489.) The court held the jury could reasonably infer, under jury instructions given in that case, that the plaintiffs were aware that the defendants' inadequate response caused the victim's death and thus substantial evidence supported the judgment. (*Id*. at pp. 490-491 [defining the "injury-producing event" as the "defendant's lack of acuity and response to [the mother's] inability to breathe, a condition plaintiffs observed and were aware was causing her injury"].)[9]

As *Fortman* did, we acknowledge that we must follow the California Supreme Court's mandates in creating a policy-based "clear rule under which liability may be determined" (*Thing*, *supra*, 48 Cal.3d at p. 664) in negligent infliction of emotional distress cases. (See also *id*. at p. 666 [drawing arbitrary lines is unavoidable if we are to limit liability and establish meaningful rules for application by litigants and lower courts]; *Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 410 [characterizing *Thing* as imposing "a hard-and-fast rule"].) Doing so here, we conclude Downey must allege facts showing she had " 'contemporaneous sensory awareness of the causal connection between the [defendant's] negligent conduct and the resulting injury.' " (*Bird*, *supra*, 28 Cal.4th at p. 918.) The complaint as

9       A dissenting justice in *Keys* disagreed that recovery was permissible, pointing to *Bird*'s approving discussion of *Wright* and *Golstein*, and stating "Plaintiffs' lack of awareness that the cause of [the mother's] continued suffering was defendant's failure to correctly diagnose the cause of her stridor . . . thus precludes [negligent infliction of emotional distress] recovery." (*Keys v. Alta Bates Summit Medical Center*, *supra*, 235 Cal.App.4th at pp. 493-494.)

presently styled does not contain such facts and thus it does not state a negligent infliction of emotional distress cause of action.

## IV. *Downey Should Be Granted Leave to Amend*

Like the conclusion of *Bird* with regard to medical malpractice cases, our conclusion does not mean a plaintiff can never state a claim for negligent infliction of emotional distress against a government entity or property owner stemming from a dangerous property condition. There may be instances where a dangerous condition is obvious and observable to a bystander, who perceives the causal connection between that condition and the injury sustained by their loved one.

Because the trial court in this case sustained the demurrers without leave to amend, we must decide whether there is a reasonable possibility that Downey can cure the defects by amendment. (*San Diego Unified School Dist. v. Yee* (2018) 30 Cal.App.5th 723, 742.) At oral argument, Downey argued that she can allege additional facts establishing that she had familiarity with, and knowledge and awareness of, the intersection and the dangerous conditions created by City and Sevacherian. Under these circumstances, Downey should be given an opportunity to allege facts showing she had the requisite " 'contemporaneous sensory awareness of the causal connection between the [defendants'] negligent conduct and the resulting injury' " (*Bird, supra*, 28 Cal.4th at p. 918) so as to support a cause of action for negligent infliction of emotional distress against City or Sevacherian.

Accordingly, we reverse the orders sustaining City's and Sevacherian's demurrers without leave to amend and direct the trial court to overrule the demurrers with leave to amend.

29

## DISPOSITION

The orders are reversed.  The matter is remanded to the trial court with directions to enter a new order overruling City's and Sevacherian's demurrers with leave to amend consistent with this opinion.  The parties shall bear their own costs on appeal.


O'ROURKE, J.

I CONCUR:


McCONNELL, P. J.

Dato, J., Concurring and Dissenting.

Plaintiff Jayde Downey is a mother-bystander claiming she suffered the negligent infliction of emotional distress (NIED) as she listened by phone to the sounds of a car crash involving her daughter's vehicle and another motorist at an allegedly dangerous intersection. I concur in the majority's decision to reverse the judgment of dismissal after the trial court sustained defendants' demurrer without leave to amend. I respectfully disagree, however, that there is any need for Downey to further amend her complaint. In my view, the Supreme Court's decision in *Bird v. Saenz* (2002) 28 Cal.4th 910 (*Bird*) does not require that Downey plead or prove that she "kn[e]w at the time of the collision of the connection between defendants' alleged negligent conduct and the collision or her daughter's injuries." (Maj. opn. at p. 3.) Rather, in a line of cases dating back to the seminal decision in *Dillon v. Legg* (1968) 68 Cal.2d 728 (*Dillon*), the Supreme Court has made clear emotional distress is compensable where a plaintiff closely related to the victim contemporaneously perceives the "injury-producing event" and understands that it is causing injury to their loved one. (See *Bird,* at p. 916 ["A plaintiff may recover based on an event perceived by other senses so long as the event is contemporaneously understood as causing injury to a close relative."]; see also *Thing v. La Chusa* (1989) 48 Cal.3d 644, 647 (*Thing*).)

Here, the immediate injury-producing event is the car crash. Downey contemporaneously perceived that event when she listened over the phone to the horrific sounds of the crash, understanding that her daughter's vehicle had been hit and her daughter seriously injured. Those allegations are sufficient to state a cause of action. Nothing requires that she be aware of each and every separate act of negligence that may have contributed to the accident.

1

# I

The majority opinion's conclusion that Downey's complaint as currently pled does not state a cause of action is based almost entirely on its reading of *Bird*. So it is important to recognize at the outset that *Bird* is a medical negligence case and did not involve any crash, explosion, or other similar traumatic event where it is a simple matter to identify the injury-producing occurrence. Courts have struggled with how to adapt the principles of *Dillon* and *Thing*—automobile accident cases—to claims like medical malpractice where there is seldom a readily-perceptible traumatic incident. The plaintiffs in *Bird* did not witness the immediate injury-producing event, which occurred during a surgical procedure behind closed doors. (*Bird, supra,* 28 Cal.4th at pp. 912, 916.) It was in the response to plaintiffs' attempt to "redefine the injury-producing event" that the court made the comments on which the majority opinion relies for its conclusion.

The Supreme Court understood that its discussion in *Bird* was necessarily contextual. Justice Werdegar made a point of characterizing the action as a medical negligence case in the first sentence of, and repeatedly throughout, her opinion. (28 Cal.4th at pp. 912, 917–922.) Indeed, the majority opinion here acknowledges the "medical malpractice context" of *Bird* and several Court of Appeal decisions on which it relies. (Maj. opn. at p. 26.) Yet the majority then seek to draw guidance from analyses in those decisions divorced from the medical negligence context on which they were based.

That medical negligence claims are different from auto accident cases is evident in the majority's reliance on language from *Golstein v. Superior Court* (1990) 223 Cal.App.3d 1415 (*Golstein*), a medical malpractice case. There, the parents of a boy being treated for cancer claimed NIED after witnessing an alleged overdose of radiation that ultimately resulted in their son's death.

2

Although agreeing with the medical practitioner defendants that their demurrer was properly sustained without leave to amend, the *Golstein* court warned about the "imperfect adaptation of 'accident' language and concepts to the medical setting." (*Id.* at p. 1423.) On three separate occasions, the opinion was careful to distinguish medical negligence cases from "the standard accident scenario" involving "an explosion, traffic accident, or electrocution." (*Id.* at pp. 1421, 1423; see also *id.* at p. 1427 [differentiating "rules having their origins in fact patterns involving visible events such as accidents"].)

Although it has sometimes been a challenge to define appropriate limitations in NIED cases where there is no "accident" for the bystander to experience, until now the rules have been clear where the plaintiff contemporaneously perceives a victim's traumatic injury in the classic *Dillon* accident scenario. Recovery is allowed where the plaintiff (1) is closely related to the injury victim; (2) contemporaneously perceives the accident and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress beyond what would have been experienced by a disinterested witness.

## II

The majority opinion agrees that Downey "contemporaneously sensed" the accident and the fact that her daughter had been injured. (Maj. opn. at p. 24.) But believing it significant that the demurrer was filed by the City of Riverside and adjacent property owners, rather than by the driver of the second car, it reads out of context *Bird*'s approving citation of language from *Golstein* as indicating that the focus must be on whether the plaintiff perceived "the defendant's ' "actual negligent act." ' " (Maj. opn. at p. 27.) From this premise, it concludes that Downey has not stated a claim because,

3

as currently pled, her complaint does not allege she knew anything about the improper design and maintenance of the intersection or maintenance of the adjacent property.

The majority effectively adopt a rule that bystander-plaintiffs must allege and prove they were aware of *each defendant's* allegedly tortious conduct. Thus in this case, Downey would be required to allege that she knew about the City's dangerous design and/or maintenance of the intersection where the crash occurred, as well as the overgrown vegetation on a nearby piece of property that obstructed the vision of motorists.

In addition to being based on language in medical negligence cases taken out of context, the more fundamental problem with the majority's proposed rule is that it has already been rejected by the Supreme Court. In *Ochoa v. Superior Court* (1985) 39 Cal.3d 159 (*Ochoa*), the court expressly disclaimed any suggestion that a bystander-plaintiff "must be aware of the tortious nature of defendant's actions." (*Id.* at p. 170.) "Such a requirement," in the court's view, "would lead to the anomalous result that a mother who viewed her child being struck by a car could not recover because she did not realize that the driver was intoxicated." (*Ibid.*)

Downey's allegations against Martin, the driver of the vehicle that collided with her daughter, are not directly before us. Still, the majority opinion seems to assume that she has adequately pled such a claim. But even this assumption is problematic in light of the majority's requirement that plaintiff be aware of the defendant's "negligent act." How can someone listening on a phone know what Martin did or did not do? And what if Martin were to claim that a passenger in the car, with whom he was arguing, grabbed the steering wheel, causing the vehicle to veer off course? Is Downey precluded from stating a claim against the passenger because she couldn't

4

possibly know about the passenger's involvement?  Or if Martin says he couldn't stop because of faulty brakes repaired by a negligent mechanic?  Is the mechanic insulated from a claim by Downey?  None of these questions are relevant if the focus is, as it should be, on whether the bystander-plaintiff contemporaneously perceived the injury-producing event, defined as the automobile accident.

## III

The ability of a bystander-plaintiff to recover for NIED in a traumatic incident situation has come before the Supreme Court in only a handful of post-*Dillon* cases, and even fewer have directly addressed the contemporaneous perception requirement.  (See *Krouse v. Graham* (1977) 19 Cal.3d 59, 76 [affirming principle that " 'sensory and contemporaneous observance of the accident' " does not require visual perception, but reversing for error in jury instructions on damages]; *Elden v. Sheldon* (1988) 46 Cal.3d 267, 277 [NIED claim does not extend to unmarried cohabitant].)  As the majority opinion here appears to recognize, the decision in *Delta Farms Reclamation Dist. v. Superior Court* (1983) 33 Cal.3d 699 fully supports the notion that parents who witness their child being injured as a result of a dangerous condition of property can recover for NIED.  (*Id.* at p. 711.)  The only other Supreme Court opinions to consider the perception issue—*Hoyem v. Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 522, and *Thing, supra,* 48 Cal.3d at page 647—focused on whether the "contemporaneous" perception requirement was satisfied by a mother who did not see the vehicle-pedestrian collision, but arrived at the scene afterwards and saw her injured child lying in the hospital (*Hoyem*) or in the street (*Thing*).

5

None of these Supreme Court cases suggest that a bystander-plaintiff must perceive anything other than the accident that causes injury to their loved one.  Indeed, the court noted in *Thing* that what justifies the award of emotional distress damages is "the traumatic emotional effect on the plaintiff who contemporaneously observes both the event *or* conduct that causes serious injury to a close relative and the injury itself." (*Thing, supra,* 48 Cal.3d at p. 667, italics added.)  Phrased in the disjunctive, *Thing* makes clear it is enough that the bystander-plaintiff contemporaneously perceives the accident; she need not also be aware of the underlying negligent cause. For this reason, comments in *Ochoa* and *Thing* to the effect that recovery is *permitted* when the bystander-plaintiff perceives "both the defendant's conduct and the resultant injury" (*Thing,* at p. 661; see also *Ochoa, supra,* 39 Cal.3d at p. 170) do not equate to a *requirement* that the plaintiff observe each defendant's negligent act.

Other courts, applying the principles set forth in *Thing* and *Bird*, have similarly focused on plaintiff's perception of the injury-producing event in cases that involve a traumatic accident.  In *Ortiz v. HPM Corp.* (1991) 234 Cal.App.3d 178, a husband and wife both worked for a company that used plastic injection molding machines.  After she observed her husband become trapped in one of the machines, the wife sued various defendants for NIED. The employer settled, and her remaining claims proceeded to trial against the machine's manufacturer, the original purchaser, and the used equipment dealer who purchased the machine from the original purchaser.  The *Ortiz* court reversed nonsuits in favor of each of those defendants, focusing on the fact that the plaintiff perceived *the accident* while it was happening.  It held that the evidence would support a finding that "the injury-producing event was still occurring at the time Mrs. Ortiz discovered Mr. Ortiz trapped in the

machine, and that she was then aware that it was causing injury to him, so as to meet the contemporaneous observation requirement for a claim of negligent infliction of emotional distress." (*Id.* at p. 186.) The court did not require—indeed, Mrs. Ortiz could not have alleged—that she was aware of how each defendant's negligent act contributed to the ultimate injury.

The Ninth Circuit Court of Appeals reached a similar conclusion in *In re Air Crash Disaster Near Cerritos* (9th Cir. 1992) 967 F.2d 1421, where the plaintiff-mother returning from the store heard and felt an explosion, which she soon learned was the result of a commercial airliner crashing into her home. She saw her home engulfed in flames, knowing her husband and children were inside. The explosion occurred after a midair collision between the airliner and a private plane. The plaintiff sued the pilot of the private plane and federal air traffic controllers, alleging NIED. Applying California law and specifically *Thing,* the Ninth Circuit affirmed a judgment in favor of the plaintiff even though she could not have been aware of the negligent acts by the private pilot or the air traffic controllers. In the appellate court's view, the district court properly focused on plaintiff's contemporaneous perception of the *explosion and fire*, not the individual acts of negligence by the respective defendants. It concluded that plaintiff "was at the scene of the injury-producing event and found that she was aware that her family was being injured." (*In re Air Crash*, at p. 1423.)

The identical argument adopted by the trial court in this case and endorsed by the majority opinion, based on a misreading of *Bird*, was presented to the federal district court in *Walsh v. Tehachapi Unified School Dist.* (E.D.Cal., Aug. 26, 2013, No. 1:11-cv-01489 LJO JLT) 2013 WL 4517887. Rejecting it, the *Walsh* court explained that *Bird* "simply appl[ies] what *Thing* already requires: a plaintiff must be aware at the time of the

7

injury-producing event of a causal connection between the victim's injuries and *the injury-producing event*." (*Walsh*, at p. *8.) It added that to the extent *Bird's* analysis "focused on a defendant's negligent conduct, it was only because the court first identified the negligent conduct as the injury-producing event, thereby making the two interchangeable. The two, however, do not always occur in tandem and are not always synonymous with one another. And when the two do diverge, it is the injury-producing event that matters." (*Walsh*, at p. *8.) The injury-producing event in this case is an automobile collision, which the majority concede Downey perceived.

I believe this court's decision in *Wilks v. Hom* (1992) 2 Cal.App.4th 1264 (*Wilks*), strongly supports the conclusion that Downey's existing complaint states a bystander cause of action for NIED. In *Wilks*, a mother sued her landlord, among others, after one of her daughters died and another was severely injured following an explosion in their home caused by an improperly installed propane stove. The mother was also in the home at the time of the explosion. The explosion was triggered from an electrical socket as a vacuum cleaner plug was removed. Although the mother was in a different room, we concluded that "she personally and contemporaneously perceived the injury-producing event and its traumatic consequences." (*Id.* at p. 1273.) The opinion contains no discussion of the nature of the landlord's "negligent acts" or how the plaintiff was aware of them. Rather, affirming the judgment in favor of the mother and approving the NIED jury instruction, we simply stated it was sufficient that "the plaintiff was at the scene of the accident and was sensorially aware, in some important way, of *the accident* and the necessarily inflicted injury to her child." (*Id.* at p. 1271, italics added.)

8

Similarly here, Downey's complaint alleges she was "sensorially aware," by virtue of the phone call, "of *the accident* and the necessarily inflicted injury to her child." (*Wilks, supra,* 2 Cal.App.4th at p.1271, italics added.) Thus, she contemporaneously perceived the injury-producing event, which she "understood as causing injury to a close relative." (*Bird, supra,* 28 Cal.4th at p. 916, citing *Wilks, supra,* 2 Cal.App.4th at pp. 1272–1273.) Nothing more is required to satisfy her pleading burden.

I would reverse the judgment of dismissal with instructions to overrule defendants' demurrer.

DATO, J.